Elvira M. WHITE, Plaintiff,

v.

Stephen E. HARRIS, et al., Defendants.

No. Civ. PJM 97–3987.

United States District Court,
D. Maryland.

Oct. 9, 1998.

Elvira M. White, Clinton, MD, pro se.

Maureen M. Dove, J. Joseph Curran, Jr., Margaret Witherup Tindall, Office of the Attorney General, Baltimore, MD, for Defendants.

## OPINION

MESSITTE, District Judge.

### I.

Elvira M. White returns to this Court a second time, seeking redress for what she believes was discrimination against her based on her race when she was employed by the Public Defender of the State of Maryland. Following the declaration of a mistrial after the jury deadlocked in her earlier case, the Court sanctioned White for intentionally destroying critical evidence and dismissed her case with prejudice. Although the present case is based on essentially the same facts that underlay the former case, White has attempted to package them in a new way. Different causes of action are framed; a fact not formally part of the earlier proceeding—her final termination from employment—has been added; and a new Defendant—Lawrence Fletcher–Hill, Esquire, who represent-

ed all Defendants in the prior litigation—has been added as a Defendant. Otherwise all Defendants named anew were also Defendants in the earlier suit.

Defendants have filed a Motion to Dismiss or in the Alternative for Summary Judgment, which White opposes.

Defendants' principal argument is claim preclusion. Having considered the motion, opposition, and reply, the Court has decided to GRANT the Motion for Summary Judgment.

## II.

The history of this unfortunate case is set out in detail in *White v. Office of Public Defender for the State of Maryland,* 170 F.R.D. 138 (D.Md.1997). White, an African-American attorney, sued the Office of the Public Defender for the State of Maryland and certain of its employees alleging racial discrimination in her employment in a variety of forms. The specifics of her claims are discussed in the reported case and need not be repeated here.

For present purposes, what matters is that in the first case the Court—following a mistrial after the jury deadlocked—acted on Defendants' Motion for Sanctions filed prior to trial (as to which the Court had reserved judgment) and their Renewed Motion filed following the mistrial—and dismissed White's suit with prejudice. The Court found that White had destroyed most of an approximately 200 page autobiographical manuscript and that she had lied both on deposition and to the Court regarding the extent of her destruction. The Court further found that the evidence was "unquestionably discoverable" in that it would have contained information relative to White's liability and damage claims, especially her claim for emotional distress. It found that White had acted despite the fact that, as a member of the Maryland and Federal Bars, she was or should have been aware of Rule of Professional Conduct 3.4 which prohibits destruction of evidence having potential evidentiary value. Finally, the Court found that the harm done to

Defendants was "manifold." White had destroyed the only copy of a highly relevant material document which could not be reconstructed. The Court deemed the document to be pertinent to issues that "permeate every phase of this case." 170 F.R.D. at 152.

Based on its finding that White had acted in bad faith and with callous disregard for the Court and its rules; that the prejudice to Defendants was manifold; that less drastic sanction and dismissal with prejudice would not do justice to the Defendants; and that "the firmest of responses to the misconduct practiced ... would be necessary to serve fundamental policies of the legal system—truthseeking, fairness, and the integrity of the judicial process," *Id.,* the Court entered a dismissal of the suit with prejudice.

White docketed an appeal of the Court's decision with the United States Court of Appeals for the Fourth Circuit, but after her counsel failed to comply with that court's requirements to prepare the record for review, the Fourth Circuit dismissed the appeal for want of prosecution. White's pro se Motion for Reconsideration of the appeal was soon after filed and denied. The present suit was filed approximately two weeks later.

## III.

The complaint in the present case tracks in all but a very few particulars the complaint of the original case. In both suits, White recounts her employment with the Maryland Public Defender's Office and the various ways in which she feels she was discriminated against, up to and including the time immediately before she was finally terminated from employment in that office. In her present suit she adds the fact of her termination from employment.[1]

She also attempts to formulate new causes of action. The first case was styled in four Counts and included claims for violation of Title VII of the Civil Rights Act of 1964 as amended, specifically disparate treatment and adverse impact (Count I) and hostile

1. White was terminated approximately three weeks prior to the date of trial in the first case. At that time, the Court offered White the option of adding the fact of termination to the pending suit, but she declined to do so. 170 F.R.D. at

142, n. 4. The Court indicated that whether and to what extent a separate claim might be premised on the termination would have had to be reviewed at a later time. *Id.* That time has come.

environment (Count II); violation of 42 U.S.C. § 1981, specifically failure to promote (Count III) and retaliation (Count IV). The present case sets out violations of: First Amendment rights of freedom of speech (Count I); First Amendment rights of freedom of religion (Count II); conspiracy to wrongfully discharge (Count III); defamation of character (Count IV); intentional infliction of emotional distress (Count V); retaliation in violation of Title VII and the Maryland State Personnel and Pension Act (Count VI); and a count styled "Equitable Relief and Attorney's Fees" (Count VII). For each of the first six Counts, White seeks $25 million dollars in damages for "the mental distress, emotional trauma, inconveniences, indignities, damage to her personal and professional reputations" plus $50 million dollars punitive damages. In her seventh Count, she asks the Court to require Defendants "to expunge from Plaintiff's official personal records the fact that she was terminated and/or disciplined."

## IV.

White's complaint against Fletcher–Hill is easily dispatched. Fletcher–Hill was the Assistant Attorney General representing the Office of the Public Defender and the individual Defendants in White's prior lawsuit. The present complaint against him suggests that (1) he "threatened (White) with termination of her then position with the Public Defender's Office" during settlement negotiations in the prior lawsuit and (2) that during the course of the prior lawsuit, he "caused members of the staff of the Public Defender's Office to photograph (White's) office for purposes of depicting her religious symbols and scripture to the jury in an attempt to humiliate Plaintiff in front of the jury and otherwise demean her because of her religious beliefs."

■ The conclusory allegation that Fletcher–Hill "threatened" White is so vague as to be meaningless. Fletcher–Hill was the attorney representing parties that White was suing. As such, he was entitled to engage in settlement discussions in an attempt to resolve the lawsuit prior to trial.

In the process, he was entitled to discuss (even if abrasively) the possibility that White's employment might be terminated and to pursue the option of possible voluntary resignation on her part. In any case, offers of compromise and evidence of statements made during settlement negotiations are not admissible under Federal Rule of Evidence 408. *See Fiberglass Insulators, Inc. v. Dupuy,* 856 F.2d 652, 654–55 (4th Cir.1988). Additionally, the Court—before whom the prior case was litigated—takes judicial notice of the fact that no claim of threats during settlement discussions was ever brought to its attention during the prior trial or at any time prior to the filing of the present lawsuit.[2] There is no basis for holding Fletcher–Hill in this suit on account of the conclusory, speculative averment that he "threatened" White during settlement discussions.

■ The fact that Fletcher–Hill may have had photographs taken of Ms. White's office during the prior lawsuit, assuming it is true, would not be actionable in and of itself. White's office was part of the Offices of the Public Defenders of the State of Maryland in both Prince George's and Charles Counties, in which Fletcher–Hill's clients were supervisors. Since his clients, by virtue of that fact, were properly in and around Ms. White's office, Fletcher–Hill would have been within the bounds of his representation to direct that photographs be taken of her office. Beyond that, to the extent that such photographs may have been offered in evidence at the earlier trial, Fletcher–Hill qua attorney would be immune from suit for any comments he may have made with respect to them. *See Dixon v. DeLance,* 84 Md.App. 441, 448–9, 579 A.2d 1213 (1990), *cert. denied,* 321 Md. 501, 583 A.2d 275 (1991). Again, the Court takes judicial notice of the fact that no allegation of impropriety on Fletcher–Hill's part regarding photographs or comments regarding photographs was brought to its attention during the prior litigation. In any event, no cause of action for violation of one's right to freedom of religion is stated merely

---

**2.** A court may take judicial notice of prior litigation between the same parties where the two cases represent related litigation. *See United*

*States Fidelity & Guar. Co. v. Lawrenson,* 334 F.2d 464, 467 (4th Cir.), cert. denied, 379 U.S. 869, 85 S.Ct. 141, 13 L.Ed.2d 71 (1964).

because counsel in civil litigation sought to use photographs to depict aspects of a party's behavior that the party feels offended her religious sensibilities. It remained for the trial judge to rule upon any actions of the attorney that may have crossed the line. No relief was sought from the Court in the earlier proceeding; indeed no problem was ever called to its attention.

Defendants' Motion for Summary Judgment as to Fletcher–Hill will be GRANTED.

## V.

█ The Court concludes that all other of White's claims are barred by the doctrine of claim preclusion. The allegations of the recent complaint are virtually the same as those made in the first lawsuit and were intimately connected with the trial of that case.

A) In new Count I for violation of First Amendment rights of freedom of speech, White complains that she was retaliated against for filing a complaint with EEOC covering purported discriminatory practices. This parallels exactly her complaint of retaliation in the prior suit.

As to new Count II for violation of First Amendment rights of freedom of religion— assuming that the fact of White's co-employees ridiculing her refusal to celebrate Halloween comes anywhere close to stating a constitutional claim—that circumstance was raised by White in the course of the first trial when she complained of treatment by her coworkers and supervisors both in Prince George's and Charles County.

New Count III, which alleges conspiracy to wrongfully discharge White, presents a slightly different problem. It is true that White's termination per se was not formally added to the earlier proceeding despite the Court's offer that it could be. On the other hand, every fact leading up to and immediately preceding White's termination, including Defendants' alleged conspiracy to end her employment, was before the Court.[3]

The fact of termination was merely the capstone of a considerably larger structure and certainly could have been addressed with little difficulty. White and her counsel ran the risk that, by failing to pursue the claim in her first trial, the opportunity to raise the claim might be irretrievably lost.

New Count IV alleges defamation and attempts to collect all negative statements made about White during her strife with the Public Defender's Offices in Prince George's and Charles County. White presented virtually all such evidence as part of her earlier case.

New Count V—intentional infliction of emotional distress—harks back to alleged threats that White would be terminated from her employment if she did not end her quest for a judicial appointment or settle her lawsuit as well as to statements that she was responsible for the termination of a former Assistant Public Defender's employment. The count also refers to the emotional distress White says was inflicted when Defendants tried to require her to "derogate her religious beliefs and accept and/or acknowledge contrary beliefs by embracing, what Plaintiff considered, demonic symbols as previously described herein." Evidence relating to White's unsuccessful pursuit of a judgeship and her purported involvement in the firing of a former Assistant Public Defender was very much a part of the earlier lawsuit. The so-called conspiracy that led to the termination of her employment has already been discussed in connection with new Count III. As to White being forced to accept demonic symbols—presumably in connection with Halloween—the allegation falls of its own weight. Assuming co-workers ridiculed her rejection of Halloween, their doing so implicates no constitutional right or its violation.

White's claim of retaliation in new Count VI is based on the filing of her claim with

---

3. The Court had the following colloquy with White's counsel just before trial:

THE COURT: Why didn't you amend when I gave you leave to do that during pretrial?

MR. BROWN: As I told you at that time, Your Honor, for financial reasons my client desires to move forward on this case, but just because she desires to move forward on this part of this case, everything up to the day of trial is relevant is probative of her claims. She cannot recover for the termination, but the jury is entitled to know that she is no longer working there.

**616**

EEOC, again clearly part of the earlier lawsuit.

Finally, new Count VII—equitable relief and attorney's fees—states no separate cause of action, but merely requests an alternative non-monetary form of relief.

B) The Fourth Circuit in *In re Varat Enter. Inc. v. Nelson, Mullins, Riley and Scarborough*, 81 F.3d 1310, 1315 (4th Cir.1996), set out (albeit in slightly different order) the conditions for claim preclusion:

1) The parties must be identical or in privity in the two actions;

2) The claims in the second litigation must be based upon the same cause of action involved in the earlier litigation; and

3) The prior judgment must have been final and rendered on the merits.

All these conditions have been met in the present case.

As to the first condition—the same parties—Defendants Harris, Lamasney, Walter and Karasic, Public Defender officials all, were named in her first Complaint. Only Fletcher–Hill, already dismissed from the suit because a claim has not been stated against him, is new in the new suit.

As to the second factor—substantial similarity of the claims and the litigation—Defendants correctly point out that the mere restatement by White of her causes of action is of no consequence. Under the doctrine of claim preclusion, barred claims include "all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." Restatement (Second) of Judgments, § 24(1) (1982). The critical inquiry is not how a legal theory is styled, but whether the theory arises out of transactions or a series of transactions the same as those resolved by the prior judgment. *See Harnett v. Billman*, 800 F.2d 1308, 1314 (4th Cir.1986). If the same evidentiary facts would sustain both suits, identity of claims will be found. *See Kutzik v. Young*, 730 F.2d 149, 151–52 (4th Cir.1984). The identity of virtually all the facts and issues alleged in White's two suits has already been discussed.

But even if new facts and issues have been pleaded, the later suit will be precluded if those facts and issues *might* have been presented in the earlier suit. *See In re Varat Enter. Inc.*, 81 F.3d at 1315; *Olivares v. NASA*, 934 F.Supp. 698, 706 (D.Md.1996), *aff'd*, 114 F.3d 1176 (4th Cir. 1997). If the claims are sufficiently related in time, space, origin and motivation; would have formed a convenient trial unit; and their treatment as a unit would conform to the parties' expectations or business understandings or usage, identity for claim preclusion purposes is established. *See* Restatement (Second) of Judgments, § 24(2). All the allegations of the new suit grow out of the circumstances of White's alienation from the Prince George's and Charles County Public Defender's Office as expressed in her claims of discrimination and retaliation. All are related in time, space, origin, and motivation. All would have formed a convenient unit for trial the first time around, and treating all the claims as a unit would have conformed to the objectively reasonable expectations of parties similarly situated. In sum, the claims in the new litigation are substantially the same if not entirely identical to those of the earlier suit.

As to the final factor relevant to claim preclusion—that the first litigation must have resulted in a final judgment on the merits—it is true, as White argues, that the first case went to trial and resulted in a hung jury. In that sense, it could be said that the merits of the case were never reached. On the other hand, the Court made clear in its order of dismissal that, by reason of White's gross discovery violation, it was dismissing the case with prejudice. Federal Rule of Civil Procedure 41(b) is relevant in this regard. It reads:

*For failure of the plaintiff* to prosecute or *to comply with these rules* or any order of court, *a defendant may move for dismissal of an action* or of any claim against the defendant. *Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule*, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, *operates as an adjudication upon the merits.* (Emphasis added)

*See also LeBeau v. Taco Bell Inc.*, 892 F.2d 605 (7th Cir.1989).

The same is true with regard to White's failure to pursue an appeal of the first case. The case was appealed to the Fourth Circuit and was dismissed for want of prosecution. The decision became final and must be considered as such even if it was wrongly decided. It is too late in the day to entertain the argument that the earlier dismissal was not on the merits.

## VI.

For the foregoing reasons, Defendants' Motion for Summary Judgment will be GRANTED.[4]

A separate implementing Order will issue.

## FINAL ORDER

Upon consideration of Defendants' Motion to Dismiss or in the Alternative for Summary Judgment and Plaintiff's opposition thereto, it is for the reasons stated in the accompanying Opinion, this 9th day of October, 1998

ORDERED:

1) That Defendants' Motion for Summary Judgment is hereby GRANTED; and

2) That the Motion to Dismiss is hereby rendered MOOT; and

3) That judgment is hereby ENTERED in favor of Defendants and against Plaintiff; and

4) That the Clerk of Court shall CLOSE this case.

---

4. This ruling renders MOOT Defendant's Motion to Dismiss.