**L. HALL, Plaintiff,**

v.

**ST. MARY'S SEMINARY & UNIVERSITY, Defendant.**

**Civil No. L–08–3281.**

United States District Court, D. Maryland.

April 16, 2009.

Leslie R. Stellman, Hodes Pessin and Katz PA, Towson, MD, for Plaintiff.

David G. Sommer, Steven G. Metzger, Gallagher Evelius and Jones LLP, Baltimore, MD, for Defendant.

### MEMORANDUM

BENSON EVERETT LEGG, Chief Judge.

Plaintiff L. Hall ("Ms. Hall") has brought this action alleging discrimination pursuant to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.*, ("Section 504"), Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, ("ADA"), and Title IX of the Education Amendments of 1972 of the Elementary and Secondary Education Act, 20 U.S.C. § 1681 *et seq.* ("Title IX"). Ms. Hall's Complaint also charges Defendant St. Mary's Seminary & University ("St. Mary's") with breach of contract under Maryland law. Now pending is St. Mary's Motion to Dismiss or, in the alternative, for Summary Judgment. Docket No. 9. The Court has reviewed the papers thoroughly and deems oral hearing unnecessary. Local Rule 105.6. For the following reasons, the Court will GRANT Defendant's Motion to Dismiss.

## I. INTRODUCTION

### A. *Factual Background*

This action originates in events that occurred while Ms. Hall was enrolled as a student at St. Mary's. Ms. Hall matricu-

lated in September 2001 in pursuit of a Master of Arts in Theology and Certificate in Religious Education. Because St. Mary's is a recipient of federal funds, it is subject to the strictures of various federal laws, including Section 504 and Title IX.[1] In her Amended Complaint, Ms. Hall charges that St. Mary's denied her request for reasonable accommodations, "including, but not limited to those both explicitly and implicitly enumerated in Saint Mary's Seminary & University/Ecumenical Institute's Academic Catalog and Student Handbook as well as provided under the law." Docket No. 7 ¶ 5. Ms. Hall self-identifies as an "otherwise qualified individual with a disability" under Section 504, but fails to specify the nature of her "physical and mental impairments" in her Complaint. Id. ¶ 6. The alleged perpetrators of this "pattern of escalating harassment" are identified as various University administrators, including Dean Michael Gorman ("Dean Gorman"), Assistant Dean Patricia Fosarelli, and Registrar Patricia Grega. Id.

Ms. Hall further charges that the Defendant retaliated against her in response to her "repeated requests for accommodation" through the following acts: (1) denying her the right to inspect and amend her student records, (2) denying her an extension on academic work, (3) abusive and hostile conduct, including "accusations spoken in public places" and "issuing the Plaintiff numerous reprimands regarding innocuous conduct and communications," (4) imposing disciplinary actions, (5) circulating "false allega-

tions that the Plaintiff had engaged in acts of academic dishonesty," (6) placing her on probation and suspension, (7) an eventual expulsion in September 2006, and (8) circulating correspondence with false allegations of plagiarism. Id. ¶ 8. Ms. Hall also claims to have been subjected to gender discrimination by Dean Gorman, Ms. Fosarelli, and Ms. Grega, through their display of "a paternalistic attitude on the one hand and a punitive attitude on the other" and being labeled as "aggressive" in a purportedly discriminatory manner. Id. ¶ 10.

Ms. Hall asserts that her expulsion has damaged her future career prospects in the field of ethics. Id. ¶ 9. Moreover, she charges that the disciplinary actions taken against her violate the policies espoused by St. Mary's Academic Catalog and Student Handbook. Id. ¶ 30. Ms. Hall seeks damages and injunctive relief in the form of expunging her records of "any and all adverse information" related to the disciplinary actions taken against her by St. Mary's. Id. ¶ 33. She also seeks attorney's fees and costs. Id.

## B. Procedural Background

Ms. Hall initially filed suit in the Baltimore City Circuit Court, seeking millions of dollars in damages based on counts of defamation, libel, intentional infliction of emotional distress, and negligence. See Complaint and Demand for Jury Trial, L. Hall v. St. Mary's Seminary & University, No. 07–7674 (Cir. Ct. Balt. City 2007) (hereinafter, "State Complaint" or "State Suit").[2] In the State Complaint, Ms. Hall

---

[1] Ms. Hall also asserts in her Amended Complaint (Docket No. 7) that St. Mary's is subject to the provisions of Title III of the ADA as a "public accommodation." See 42 U.S.C. § 12181(7). Defendant correctly notes, however, that St. Mary's is exempt from the requirements of Title III as a "religious entity." See 42 U.S.C. § 12187. As Ms. Hall has indicated her "prepared[ness] to withdraw Count

3 of the Complaint," the Court will not consider her abandoned ADA claim in deciding the pending motion. Docket No. 11.

[2] Prior to filing the complaint in the Baltimore City Circuit Court, Ms. Hall filed a replevin action against St. Mary's in the District Court of Maryland, Baltimore County. See Lynne Hall v. St. Mary's Seminary &

made similar allegations against the University and Dean Gorman as those asserted in the pleadings for the instant suit (hereinafter, "Federal Complaint" or "Federal Suit").

To illustrate, both the State and Federal Complaints allege that Dean Gorman (or St. Mary's, "through its agents, officers and employees") "engaged in a pattern of escalating harassment directed towards Plaintiff," which included "public display of disdain, disbelief [and scorn] targeting the Plaintiff in connection with her use of [a] service dog. *See* State Complaint ¶ 4; Federal Complaint ¶ 6.

In addition, both Complaints allege a pattern of harassment, though the State Complaint does so in greater detail and catalogues several illustrative examples. For instance, in the State Complaint Ms. Hall describes an incident occurring in December 2004, "in which Defendant Gorman needlessly traumatized the Plaintiff by publicly questioning her, in a loud and abusive tone of voice, as to why she needed the use of a service dog on campus." *Id.* ¶ 5. Another example from May 24, 2005 describes a meeting between Dean Gorman and Ms. Hall "in connection with a letter written to Plaintiff, accusing her of engaging in assertive written communications with members of the Institute faculty," during which Dean Gorman is alleged to have "verbally abused the Plaintiff" in the presence of faculty and administrators. *Id.* ¶ 6. On December 19, 2005, Ms. Hall reports that Dean Gorman interrupted a meeting between herself and Ms. Fosarelli, which apparently added to the alleged "pattern of harassment" because the interruption occurred "in a public place on the Institute's campus." *Id.* ¶ 7. In a subsequent episode involving Dean Gorman, Ms. Hall describes the following "harassing" behavior: "scowling, frowning, aggressiveness, use of a threatening tone of voice, and a barrage of accusations" in response to "a routine note which Plaintiff sent to one of her professors requesting extra time to complete an assignment." *Id.* ¶ 8. Ms. Hall reports that she reacted to this confrontation so severely as to suffer a "catastrophic blackout" which "triggered short-term amnesia due to trauma." *Id.* Finally, the State Complaint refers to a letter dated November 15, 2006 from Dean Gorman to members of the faculty accusing Ms. Hall of plagiarism in reference to a final paper. *Id.* ¶ 9.[3]

The Baltimore City Circuit Court dismissed the suit with prejudice on January 15, 2008 without written opinion, but based its decision upon "the reasons set forth in the Motion to Dismiss or, in the Alternative, Motion for Summary Judgment." Order Dismissing Case, *L. Hall v. St. Mary's Seminary & Univ.,* 07–7674 (Cir.Ct.Balt.County, Jan. 15, 2008). Ms. Hall has now brought suit in this Court against St. Mary's (but not the individual defendants) alleging three federal causes of action and one additional state cause of action for breach of contract. St. Mary's moves for dismissal of the Federal Com-

*Univ.,* No. 804–4356 (Dist. Ct. Md., Balt. County 2007). This complaint alleged that St. Mary's, a faculty member, and an administrator, withheld certain equipment Ms. Hall had used in preparing student work. The District Court dismissed the case with prejudice on October 17, 2007, pursuant to Maryland Rule 3–506, Voluntary Dismissal. *See* Order, *Lynne Hall v. St. Mary's Seminary & Univ.,* No. 804–4356 (Dist.Ct.Md., Balt.County, Oct. 17, 2007).

3. The timeline of events in the Complaint is somewhat unclear. Ms. Hall reports that she was expelled from St. Mary's in August 2006 in Paragraph 1 of the Federal Complaint. The events relating to the letter accusing her of plagiarism, however, would appear to have occurred after her dismissal from the Institute.

plaint on grounds of *res judicata* and failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II. STANDARD OF REVIEW

St. Mary's seeks to dismiss this suit on a motion to dismiss or, in the alternative, motion for summary judgment. Ordinarily, a complaint should not be dismissed for failure to state a claim under Rule 12(b)(6) unless it appears beyond all doubt that the plaintiff can prove no set of facts in support of its claim which will entitle her to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Labram v. Havel,* 43 F.3d 918, 920 (4th Cir.1995). In order to survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead plausible, not merely conceivable, facts in support of her claim. *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The complaint must state "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555, 127 S.Ct. 1955. The Court must, however, "accept the factual allegations of the complaint as true and must view the complaint in the light most favorable to the plaintiff." *GE Inv. Private Placement Partners II v. Parker,* 247 F.3d 543, 548 (4th Cir.2001).

In deciding Defendant's Motion to Dismiss, this Court must necessarily consider matters outside the pleadings. We need not, however, convert Defendant's motion to dismiss into one for summary judgment, provided that we simply take judicial notice of facts from Plaintiff's prior judicial proceeding, over which there are no disputed issues of material fact. *See Andrews v. Daw,* 201 F.3d 521, 524 n. 1 (4th Cir.2000).

## III. ANALYSIS

■ Defendant raises the affirmative defense of *res judicata,* among others, in support of its Motion to Dismiss. We must apply Maryland law in determining the preclusive effect of the prior dismissal of Ms. Hall's State Suit. *See Laurel Sand & Gravel, Inc. v. Wilson,* 519 F.3d 156, 161–62 (4th Cir.2008) ("Generally, the preclusive effect of a judgment rendered in state court is determined by the law of the state in which the judgment was rendered."). The doctrine of *res judicata* (or claim preclusion) serves to "prevent[ ] litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." *Peugeot Motors of Am., Inc. v. Eastern Auto Distributors, Inc.,* 892 F.2d 355, 359 (4th Cir.1989) (quoting *Brown v. Felsen,* 442 U.S. 127, 131, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979)). The purpose of *res judicata* is to "encourage[ ] reliance on judicial decisions, bar[ ] vexatious litigation, and free[ ] the courts to resolve other disputes." *Brown,* 442 U.S. at 131, 99 S.Ct. 2205; *Pueschel v. United States,* 369 F.3d 345, 354 (4th Cir.2004).

■ In Maryland, a party asserting defensive claim preclusion must demonstrate the following three elements: (1) the parties in the present litigation are the same or in privity with the parties to the earlier litigation; (2) the claim presented in the current action is identical to that determined or that which could have been raised and determined in the prior litigation; and (3) there was a final judgment on the merits in the earlier suit. *Colandrea v. Wilde Lake Cmty. Ass'n,* 361 Md. 371, 389, 761 A.2d 899 (2000). We will analyze each element of the Maryland *res judicata* standard in turn.

### A. Identity or Privity of Parties

■ The first necessary element of *res judicata* is that the parties are the same or in a privity relationship with the

parties to the earlier litigation. In the context of claim preclusion, the term "privity" refers to "a person so identified in interest with another that he represents the same legal right." *FWB Bank v. Richman*, 354 Md. 472, 498, 731 A.2d 916 (1999). In this case, both the State and Federal Suit involve identical parties—Ms. Hall as the sole plaintiff and St. Mary's as the Defendant.[4]

Ms. Hall contests that the parties involved in the two suits are not the same because Dean Gorman is named as the "principal tortfeasor" in the State Suit, but he is not a named defendant in the Federal Suit. *See* Docket No. 11. In the very next breath, however, Ms. Hall explains that the causes of action asserted in her Federal Complaint—Section 504 and Title IX—may not be asserted against individuals. *Id.* This distinction only highlights the point that the roster changes she has made between the State and Federal Complaints do not result from substantial differences in the underlying facts, but rather are dictated only by the alternate legal theories she has asserted between the two suits. The fact that Dean Gorman was added as an additional named Defendant in the prior suit is of no consequence for claim preclusion purposes.[5] Accordingly, the first element of the Maryland standard for *res judicata* has been satisfied.

### B. *Final Judgment on Merits*

■ The next element of *res judicata* is that a final judgment on the merits issued in the earlier case. The Circuit Court's

dismissal of Ms. Hall's prior state tort action with prejudice satisfies this requirement.[6] *See Church v. Maryland*, 180 F.Supp.2d 708, 748 (D.Md.2002) ("[U]nder Maryland law, a dismissal 'with prejudice' qualifies as an adjudication 'on the merits' and thus satisfies that requirement of res judicata."). *See also N. Am. Specialty Ins. Co. v. Boston Med. Group*, 170 Md. App. 128, 148, 906 A.2d 1042 (2006). While the Circuit Court issued no written opinion supporting its decision, its grounds for dismissal were based upon "the reasons set forth in the Motion to Dismiss or, in the Alternative, Motion for Summary Judgment filed by Defendants St. Mary's Seminary & University and Michael J. Gorman." *See* Order Dismissing Case, *L. Hall v. St. Mary's Seminary & Univ.*, 07–7674 (Cir.Ct.Balt.County, Jan. 15, 2008). Consequently, the Circuit Court's dismissal of the State suit, as affirmed by the Court of Special Appeals, constitutes an adjudication "on the merits" for claim preclusion purposes.

### C. *Identity of Claims*

■ The final element for *res judicata* is that "the claim presented in the new litigation arises out of the same transaction or series of transactions as the claim resolved by the prior judgment." *Laurel Sand*, 519 F.3d at 162 (internal quotation marks omitted). In Maryland, the standard for determining identity of claims is "whether the same evidentiary facts would sustain both suits." *Kutzik v. Young*, 730 F.2d 149 (4th Cir.1984) (citing *MPC, Inc.*

---

4. In the State Suit, Ms. Hall also named Dean Gorman as a defendant, although he is not a named party in the Federal Complaint.

5. As an aside, the Court notes that Dean Gorman and St. Mary's are also in privity, as the underlying facts supporting Ms. Halls' discrimination claims are largely based upon Gorman's alleged acts of harassment against Ms. Hall.

6. Although Ms. Hall was in the midst of appealing the dismissal to the Maryland Court of Special Appeals during the pendency of the present motion, that court has recently issued an unreported opinion affirming the Circuit Court's dismissal. *See L. Hall v. St. Mary's Seminary and University*, No. 119, slip op. (Md.Ct.Spec.App. Feb. 24, 2009).

v. *Kenny*, 279 Md. 29, 33, 367 A.2d 486 (1977)). Two suits that rely upon the same facts will share an identity of claims even if the suits are based upon different legal theories. *Kutzik*, 730 F.2d at 152. *See Anne Arundel County Bd. of Educ. v. Norville*, 390 Md. 93, 111, 887 A.2d 1029 (2005) ("Once a set of facts has been litigated, res judicata generally prevents the application of a different legal theory to the same set of facts, assuming that the second theory of liability existed when the first action was litigated.") (internal quotations omitted). Even if additional facts are pleaded in the later suit, the new claims will be precluded if those facts and issues could have been presented in the earlier suit. *White v. Harris*, 23 F.Supp.2d 611, 613–14 (D.Md.1998).

### 1. Both Suits Part of the Same "Transaction"

The term "transaction" in the context of *res judicata* generally refers to a "natural grouping or common nucleus of operative facts." *Pittston Co. v. United States*, 199 F.3d 694, 704 (4th Cir.1999). The relevant factors for determining a "transaction" include facts that "are sufficiently related in time, space, origin and motivation; would have formed a convenient trial unit; and their treatment as a unit would conform to the parties' expectations or business understandings or usage." *White*, 23 F.Supp.2d at 616 (citing Restatement (Second) of Judgments § 24(2) (1982)).

In this case, all the facts asserted in the Federal Complaint were, or could have been, asserted in the State Complaint. Although the specific examples of harassment are not itemized in the Federal Complaint, both pleadings depend upon the same series of events leading up to Ms. Hall's expulsion from the University. Indeed, the only new fact introduced in the Federal Complaint is the revelation of Ms. Hall's expulsion, which had not been disclosed in the State Complaint. *See* Docket No. 11, p. 10. This additional piece of information, however, does not provide sufficient grounds for this Court to ignore the clear mandate of claim preclusion.

Nevertheless, Ms. Hall urges that her claims fall under an exception to the rule of *res judicata* because her Federal Suit alleges different legal theories and seeks remedies (namely equitable relief and attorneys fees) that were unavailable in her State Suit. It is indisputable, however, that Maryland precedent does not support this position. In Maryland, claims may "arise out of the same transaction or series of transactions even if they involve different harms or different theories or measures of relief." *Anyanwutaku v. Fleet Mortg. Group, Inc.*, 85 F.Supp.2d 566, 571 (D.Md.2000) (citing Restatement (Second) of Judgments § 24(2) cmt. c (1982)). *See Bouchat v. Bon–Ton Department Stores, Inc.*, 506 F.3d 315, 328 (4th Cir.2007) (plaintiff's decision not to seek actual damages in the first suit did not alter the court's "conclusion that the claims in [his] cases were identical"); *See also Reeves v. St. Mary's County Comm'rs*, 268 F.Supp.2d 576, 584 (D.Md. 2003) ("When claims arise out of a single nucleus of operative fact (or out of the same 'transaction'), they will be barred even if they involve different harms or different legal theories."). Ms. Hall may not, therefore, avoid the consequences of claim preclusion merely by asserting variable forms of relief among separate suits that arise from the same transaction.

Alternatively, Ms. Hall would have us deny St. Mary's Motion to Dismiss on equitable grounds. She argues that it would be unfair to dismiss her Federal Complaint because she was forced to bifurcate her claims in order to meet the one-year statute of limitations for her libel and slander

claims. *See* Md.Code Ann., Cts. & Jud. Proc. § 5–105 (one-year statute of limitations for assault, libel, and slander actions). In addition, she attributes the pendency of an investigation by the Office for Civil Rights of the United States Department of Education ("OCR") for her decision to bifurcate her federal and state causes of action. Both arguments are without merit, and will be addressed in turn.

### 2. *No Requirement of Administrative Exhaustion*

Section 504 and Title IX grant jurisdiction to OCR "to investigate complaints involving individuals covered by the law (e.g., applicants, students, parents) and employment complaints based on disability." OCR Case Processing Manual §§ 601(c) and (e) (2008). *See* 34 C.F.R. §§ 104.1–.61; 34 C.F.R. §§ 106.1–.71. When an individual initiates a complaint and seeks further investigation by OCR, the agency must determine within 105 days of receiving the complaint whether a violation has occurred. *See Rapp, Education Law* § 10.16 (2008). If a violation is found, OCR will first attempt to bring the institution into voluntary compliance. *Id.* If the institution takes no corrective action within 195 days after receiving the complaint, OCR will initiate formal proceedings within 225 days of receiving the complaint. *Id.* If, however, no violation is found to have occurred, the complainant will be notified in writing and the matter closed. *Id.* The complainant is then at liberty to pursue a private action against the institution. *Id.* This framework would seem to provide Ms. Hall with sufficient time to proceed with the OCR administrative procedure and still meet the one-year

statute of limitations for her pendant libel and slander claims against Dean Gorman.

In her brief, Ms. Hall states that she filed her OCR Complaint on October 13, 2006. *See* Docket No. 11, p. 17 n. 3. On March 24, 2007, OCR determined that there was merit to her complaint under Section 504, but found no violation based on retaliatory conduct. *Id.* Ms. Hall submitted a request for reconsideration, which was denied on March 17, 2008. *Id.* On May 12, 2008, Ms. Hall appealed to OCR's Acting Deputy Secretary for Enforcement, which has yet to reach a decision. *Id.* Ms. Hall filed her State Complaint on October 17, 2007, at which point she could have raised both her state tort claims and her federal claims. Consequently, the delays in processing the OCR complaint were due to Ms. Hall's election to appeal the OCR determination, in lieu of filing a lawsuit under Section 504. If Ms. Hall wished to pursue her administrative remedies to completion, she had other options available that would have allowed her to package all of her claims in one suit.

In *Herrmann v. Cencom Cable Associates, Inc.,* 999 F.2d 223, 225 (7th Cir.1993), the Seventh Circuit held that in cases where one transaction "was alleged to violate a host of different laws," a plaintiff should not divide her suit between the claims that did not have administrative exhaustion requirements and her Title VII claims.[7] For plaintiffs facing a looming statute of limitations deadline, however, the *Herrmann* court discussed a variety of viable options. First, the plaintiff could ask the administrative reviewing body to accelerate its investigation. *Id.* Alternatively, a defendant who saw an opportunity to settle the case informally with the assis-

---

**7.** The Seventh Circuit ultimately held that the plaintiff's COBRA suit was not barred by *res judicata* because it arose from facts having no connection to the charges of racial and gen-

der discrimination underlying her Title VII claim. *Id.* at 226. The court's preliminary *res judicata* analysis is otherwise on point.

tance of the administrative body could agree not to plead the statute of limitations. *Id.* The plaintiff could also utilize a recognized exception to the doctrine of *res judicata*, which allows parties to agree to split a single claim into two or more suits. *Id. See Keith v. Aldridge,* 900 F.2d 736, 740 (4th Cir.1990); Restatement (Second) of Judgments § 26(1)(a) (1982). Finally, the plaintiff could sue on her other claims and ask the court to stay the proceedings until the administrative process was complete. *Herrmann,* 999 F.2d at 225. If the administrative proceeding did not end in her favor, she could then amend the complaint to add the additional claim. *Id. See also Boateng v. InterAmerican Univ., Inc.,* 210 F.3d 56, 63 (1st Cir.2000) (when more than two years elapsed between plaintiff's receipt of a right-to-sue letter and the entry of final judgment in the state suit, *res judicata* barred a second suit in federal court because plaintiff could easily have amended his complaint to add the Title VII claims).

■■■ The instant suit differs from the factual scenario in *Herrmann* because, unlike Title VII, neither Title IX nor Section 504 require exhaustion of administrative remedies in non-employment cases prior to filing suit. *See Cannon v. Univ. of Chicago,* 441 U.S. 677, 707–08 n. 41, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979) (plaintiffs need not exhaust Title IX administrative remedies before pursuing private lawsuits); *Freed v. CONRAIL,* 201 F.3d 188, 192 (3d Cir.2000) ("[P]laintiffs suing private recipients of federal funds under section 504 do not exhaust Title VI administrative remedies") (collecting cases). Accordingly, Ms. Hall's suggestion that the Court allow her to avoid the consequences of *res judicata* based upon her preference for pursuing an administrative process prior to filing suit on her civil rights claims is unwarranted.[8] There were no administrative or statutory barriers preventing Ms. Hall from pursuing all of her claims in either state or federal court. Rather, the *Herrmann* opinion demonstrates that, with proper planning, Ms. Hall could have exercised her choice to pursue an administrative investigation of her claims without sacrificing her option to sue on the Section 504 claims at a later time.[9] To permit Ms. Hall another bite of the apple now would encourage inefficiency and would defeat the purposes of claim preclusion.

### 3. *No General Equitable Exception to Claim Preclusion Doctrine*

Alternatively, Ms. Hall appeals to general principles of equity and fairness in her attempt to convince this Court to ignore the strictures of *res judicata.* In her brief, Ms. Hall complains of being "[f]aced with a Hobson's choice between filing a consolidated Section 504 and tort claim" and, presumably, her ultimate choice to bifurcate her claims. Docket No. 11. Seemingly, she would have us create an *ad hoc* exception to the doctrine of *res judicata* due to this perceived inequity.

■■■ There are, however, no grounds for a "fairness" exception to the law of *res*

---

**8.** Ms. Hall's concern that OCR would discontinue its investigation if she filed the instant suit, therefore, is of no moment for claim preclusion purposes. *See* OCR Case Resolution and Investigation Manual § 109(i) (2005) (stating that "OCR will decline to proceed further with complaint allegations" when "[l]itigation has been filed raising the same allegations").

**9.** In fact, the only claims subject to the one-year statute of limitations were Ms. Hall's state libel and slander claims. The intentional infliction of emotional distress and negligence claims were subject to the general 3-year statute of limitations. *See* Md.Code Ann., Cts. & Jud. Proc. § 5–101. Furthermore, Ms. Hall has offered no explanation for her failure to assert her breach of contract claim in the original State Complaint.

*judicata.* The Supreme Court made clear in *Federated Department Stores, Inc. v. Moitie,* 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981) that there is no general equitable exception to the doctrine of *res judicata.* In *Moitie,* the Court held that a district court's denial of a defendant's request to dismiss under *res judicata,* based on grounds of "simple justice," was misplaced. *Id.* at 401, 101 S.Ct. 2424. On the contrary, the Court reiterated that judges are not permitted to make "ad hoc determination[s] of the equities of a particular case," and held that no "principle of law or equity" exists "which sanctions the rejection of a federal court of the salutary principle of res judicata." *Id.* (quoting *Heiser v. Woodruff,* 327 U.S. 726, 733, 66 S.Ct. 853, 90 L.Ed. 970 (1946)). *See also In re Teal,* 16 F.3d 619, 622 n. 6 (5th Cir.1994) (noting that "a federal court may not abrogate principles of res judicata out of equitable concerns"); *Horwitz v. Alloy Automotive Co.,* 992 F.2d 100, 105 (7th Cir.1993) (stating that *Moitie* "closes the door on ad hoc, equitable exceptions" to the doctrine of *res judicata* ). While there are some limited exceptions to the application of *res judicata,* these exceptions are discrete and must be applied narrowly. *See* Moore's Federal Practice—Civil § 131.24 (2009) (outlining recognized exceptions to doctrine of claim preclusion). As Ms. Hall has not asserted that her claims fall under a recognized exception to the claim preclusion doctrine, we are not at liberty to create a *sui generis* exception to fit her unique circumstances.

## IV. CONCLUSION

Because the allegations in both the State and Federal suits originated from Ms. Hall's grievances against St. Mary's for purported harassment, retaliation, and the circulation of false allegations of plagiarism, both suits arise from the same series of transactions. Moreover, Ms. Hall could have asserted all of these claims in one complaint, with her choice of either a state or federal forum.[10] While she was not obligated to exhaust her administrative remedies with OCR, she nonetheless had ample time to complete the investigative process prior to bringing suit. Alternatively, she could have filed suit and immediately petitioned the Court to stay the proceedings while the OCR investigation was pending. Absent definite grounds for applying a recognized exception to the doctrine of claim preclusion, the Court is not at liberty to fashion a new exception based upon general notions of fairness and equity.

For the foregoing reasons, the Court will GRANT Defendant's Motion to Dismiss. A separate Order follows.

**10.** *See Gulf Offshore Co. v. Mobil Oil Corp.,* 453 U.S. 473, 478, 101 S.Ct. 2870, 69 L.Ed.2d 784 (1981) (recognizing a general presumption of concurrent jurisdiction by state courts over federal claims, which is rebuttable "by an explicit statutory directive, by unmistakable implication from legislative history, or by a clear incompatibility between state-court jurisdiction and federal interests"). *See also De* *Bleecker v. Montgomery County,* 48 Md.App. 455, 459, 427 A.2d 1075 (1981), *rev'd on other grounds,* 292 Md. 498, 438 A.2d 1348 (1982) (noting that "unless the Congress has conferred exclusive jurisdiction in federal courts, the State courts have concurrent jurisdiction even if the action is based entirely on federal claims").