Donald A. **HORWITZ** and **Wesco Products Company**, Plaintiffs–Appellants,

v.

**ALLOY AUTOMOTIVE COMPANY, Sheldon Gray, and Avrum Gray,** Defendants–Appellees.

No. 92–2803.

United States Court of Appeals, Seventh Circuit.

Argued April 2, 1993.

Decided April 21, 1993.

Forrest L. Ingram (argued), John B. Kalish, John E. Gierum, Christine M. Reidy, Kalish & Colleagues, Kenneth W. Bley, Durkin, Morgan, Roberts, Barnett & Bley, Chicago, IL, for plaintiffs-appellants.

Peter Flynn (argued), Myron M. Cherry, Jeffrey M. Wagner, Cherry & Flynn, Chicago, IL, for defendants-appellees.

Before POSNER and EASTERBROOK, Circuit Judges, and TIMBERS, Senior Circuit Judge.*

EASTERBROOK, Circuit Judge.

Wesco Products Company fell on hard times in the late 1970s. Negotiations to infuse new capital or sell the business failed, and Wesco filed a petition under Chapter 11 of the Bankruptcy Code of 1978. During the bankruptcy Alloy Automotive Company offered to buy the business, but Wesco's creditors set terms Alloy was unwilling to accept. Eventually Alloy purchased one product line. The bankruptcy court approved this pur-

---

* Hon. William H. Timbers, of the Second Circuit,    sitting by designation.

chase. Wesco as debtor in possession, and Donald Horwitz as its manager and sole equity investor, contended that Alloy had connived with its lenders to strip away its assets and had taken over the whole business, even though it had paid for but a single product line. Wesco commenced an adversary proceeding in the bankruptcy, charging Alloy, its managers, and the bank that was Wesco's principal secured creditor, with business torts, breach of trust, and violations of the trademark laws. Horwitz commenced a separate lawsuit making the same allegations and adding a claim under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–68.

Both the Chapter 11 reorganization and the adversary proceeding languished. Wesco did not propose a plan of reorganization, and its creditors did not ask the bankruptcy judge to liquidate the firm under Chapter 7. No one filed anything in the adversary proceeding after 1982. On January 11, 1985, Bankruptcy Judge Eisen dismissed the reorganization under 11 U.S.C. § 1112(b). The order adds: "the adversary proceeding is rendered moot by the dismissal of the bankruptcy case and is therefore adjourned sine die." A case that has become moot is not adjourned, "sine die" or otherwise; it is dismissed. Although Judge Eisen may have meant to dismiss it, no such order was entered on the docket of the adversary proceeding. On August 4, 1986, Judge Eisen set a status hearing in the adversary proceeding for September 2, 1986. The order instructs counsel to appear and adds that failure to do so would result in dismissal with leave to reinstate. No one appeared on September 2. Judge Eisen entered this order the same date: "Plaintiff's complaint is dismissed for want of prosecution." Wesco did not appeal.

The separate case that Horwitz filed—this case—was proceeding in desultory fashion in the district court. Wesco joined as a plaintiff after the conclusion of the bankruptcy. Alloy eventually invoked Judge Eisen's order of September 2 as claim preclusion (res judicata), observing that under Fed.R.Civ.P. 41(b), applied to adversary proceedings by Fed. R.Bankr. 7041, an order dismissing a case for want of prosecution acts as an adjudication on the merits:

For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits.

See *Kimmel v. Texas Commerce Bank*, 817 F.2d 39 (7th Cir.1987); *LeBeau v. Taco Bell, Inc.*, 892 F.2d 605 (7th Cir.1989). After Alloy and the Grays pleaded this order as res judicata, Wesco scurried back to the bankruptcy court, where in January 1988 it asked Judge Wedoff (Judge Eisen's successor) to vacate the order of September 2, 1986. Eventually the question came to this court. We held that Judge Eisen acted within his jurisdiction and that Wesco's delay foreclosed all other objections to his order. *Wesco Products Co. v. Alloy Automotive Co.*, 880 F.2d 981 (7th Cir.1989). The panel did not, however, prescribe the consequences, observing: "*Res judicata* ... is not an inflexible principle, *see* C. Wright & A. Miller, *Federal Practice and Procedure*, § 4415 (2d ed. 1981), and Wesco is not precluded from arguing that an exception to the doctrine should apply." *Id.* at 985 n. 5.

Our decision in 1989 closed the books on the bankruptcy case and left the preclusion question for District Judge Bua, presiding in the remaining action. Judge Bua held that four of the plaintiffs' claims were precluded and attempted to return the case to us without entering a final decision. We dismissed plaintiffs' appeal for want of jurisdiction. *Horwitz v. Alloy Automotive Co.*, 957 F.2d 1431 (7th Cir.1992). By then Judge Bua had resigned, and Judge Shadur had been assigned to the case. He granted judgment in defendants' favor. Wesco and Horwitz have abandoned their claims under RICO and the trademark laws, leaving only tort claims based on state law. These Judge Shadur dismissed on grounds of preclusion, deeming the issue settled by Judge Bua's order. Plaintiffs believe that preclusion is impossible

because a bankruptcy judge lacks jurisdiction over state-law claims unless the parties consent to the adjudication. See *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

■■■ A large part of plaintiffs' brief on appeal is given over to a request that we overrule the opinion issued in 1989. That is not in the cards. The panel fully considered the issues, and no subsequent developments draw the reasoning into question. See *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 815–18, 108 S.Ct. 2166, 2177–78, 100 L.Ed.2d 811 (1988). Plaintiffs' assertion that the bankruptcy judge lacked jurisdiction because of the nature of the claims in the adversary action was not passed on by the prior panel, and thus is open today, but is unsubstantial. *Marathon* and the 1984 legislation to which it gave rise removed from the bankruptcy court's jurisdiction some state-law claims that were independent of the reorganization. Claims "arising in" the bankruptcy proceeding are securely within the bankruptcy court's power. 28 U.S.C. § 157(a). Wesco contends that Alloy defrauded it during the negotiations leading to the sale of part of its business and the confirmation of that sale. See § 157(b)(2)(A), (N). It demanded that Alloy return to the estate the assets it had purchased. See § 157(b)(2)(E). No claims that arose prior to the commencement of the bankruptcy case are before us. Although § 157(b)(2)(O) excludes from "core" proceedings "personal injury tort or wrongful death claims", business torts cannot be shoehorned into this category. What is more, § 157(c)(2) permits litigants to consent to a bankruptcy court's decision of a non-core claim related to the bankruptcy. Wesco filed its adversary action in the bankruptcy court and never asked that court to refer the matter to a district judge. Silence does not imply consent, *Home Insurance Co. v. Cooper & Cooper, Ltd.*, 889 F.2d 746, 750 (7th Cir.1989), but affirmatively invoking the bankruptcy court's jurisdiction most assuredly supplies whatever consent is necessary. *In re Mann,* 907 F.2d 923, 926 (9th Cir.1990).

■■■ Most of plaintiffs' remaining arguments are equally thin. They contend, for example, that defendants forfeited the benefit of the 1986 order by pleading "res judicata" rather than "claim splitting" as a defense. The argument is hair splitting. Claim splitting is an *aspect* of the law of preclusion. Lawyers often use the words "res judicata" to summon up all aspects of preclusion. E.g., *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *Sutcliffe Storage & Warehouse Co. v. United States*, 162 F.2d 849, 852 (1st Cir.1947); *Harper Plastics, Inc. v. Amoco Chemical Corp.*, 657 F.2d 939, 943 (7th Cir.1981); *Car Carriers, Inc. v. Ford Motor Co.*, 789 F.2d 589, 593–94 (7th Cir. 1986). The potential for confusion engendered by the Latinate "res judicata" and "collateral estoppel" have led the American Law Institute and many other thoughtful persons to prefer "claim preclusion" and "issue preclusion," which are more descriptive. See *Restatement (2d) of Judgments* § 27 (1982).

■■■ Next comes the contention that Horwitz and Wesco may go on litigating against the Grays, Alloy's managers and principal investors, even if Alloy is entitled to the benefit of the 1986 order. Yet principles of preclusion apply not only to the parties to the first case (that is, to Alloy) but also to those in privity with them (the Grays). E.g., *Montana v. United States*, 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979); *Supporters to Oppose Pollution, Inc. v. Heritage Group*, 973 F.2d 1320, 1327 (7th Cir.1992). Horwitz, as Wesco's CEO and sole shareholder, is assuredly in privity with Wesco. Why, then, would the Grays not be in privity with Alloy? Plaintiffs quibble with the district court's disposition of this subject but have no real ground for doubting its propriety.

■■■ Plaintiffs lack any substantial basis to doubt the district court's impartiality. Judge Shadur informed them soon after coming to the case that Avrum Gray lived in his neighborhood and that he knew the Grays' parents socially. That does not create an actual conflict of interest, see 28 U.S.C. § 455(b), and plaintiffs did not take the steps necessary to preserve any argument they

may have under § 455(a): they never asked Judge Shadur to recuse himself, and they did not seek a writ of mandamus from this court. *United States v. Masters*, 924 F.2d 1362, 1367 (7th Cir.1991).

■ Almost buried under the avalanche of legal rubble is plaintiffs' only substantial contention, the one footnote 5 of our 1989 decision invites them to make: that some exception to preclusion applies. The treatise we cited gives some examples, of which the closest is lack of notice of the first proceeding. *Smith v. United States*, 403 F.2d 448, 450–51 (7th Cir.1968), cited in *Federal Practice and Procedure* § 4415 n. 23. Wesco had notice of the adversary proceeding (indeed had initiated it) and notice of the status conference on September 2, 1986. But it may have been misled by that notice into believing that any dismissal would be without prejudice. Wesco and Horwitz had little to fear from such an order, as they already had this separate suit under way. Dismissal was inevitable; back in 1985 Judge Eisen had called the adversary proceeding "moot." (Which it was not; we held in 1989 that the bankruptcy court possessed subject-matter jurisdiction in 1986.) So Wesco did not send a representative. The judge then entered a surprising order dismissing the adversary proceeding "for want of prosecution", an order that, under Rule 41, is *with* prejudice unless the court "otherwise specifies". Apart from their request that we overrule the 1989 decision, plaintiffs do not contend that the 1986 order falls outside this rule. They do not contend that Rule 41(b) is inapplicable because the order fell outside the domain of that provision. Still, they submit, being misled by a notice is as bad as receiving no notice, which leads them to believe that the 1986 order lacks preclusive force.

Although this argument is not without power, it comes perilously close to saying that *erroneous* orders do not bar subsequent litigation. Perhaps Judge Eisen's order was mistaken, in the sense that the district court would have reversed it and dismissed the proceeding without prejudice, had a timely appeal been taken. But Wesco did not appeal. The proper course, if not appeal, was a motion under Fed.R.Civ.P. 60(b)(1). Yet the deadline for such a motion is one year, and Wesco took that time plus another four months. That led to our holding in 1989 that Wesco had waited too long to draw the problem to the bankruptcy court's attention. If that is correct (and we have already declined to revisit it), then plaintiffs have no independent reason, "equitable" or otherwise, that justifies withholding from the order the significance it otherwise would possess.

Wesco received notice of the status conference. At least, Wesco's attorneys in the adversary action received the notice; that they may not have relayed the notice to the attorneys representing Wesco in this separate litigation could give Wesco a legitimate grievance with counsel but does not enlarge its rights against third parties. *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, —— U.S. ——, ——, 113 S.Ct. 1489, 1499, 123 L.Ed.2d 74 (1993); *United States v. Boyle*, 469 U.S. 241, 105 S.Ct. 687, 83 L.Ed.2d 622 (1985); *Link v. Wabash R.R.*, 370 U.S. 626, 633, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962). Counsel's failure to follow up on the notice and the subsequent order does not diminish Alloy's entitlement to reap the benefit of that favorable judgment. There may be a further problem: Like many lawyers, Wesco's counsel may not have appreciated that a plain vanilla dismissal for want of prosecution precludes further litigation. Inattention to the effect of Rule 41(b) leads to a harsh result— yet again the consequences of counsel's shortcomings (if this was the source of the problem) fall on the client rather than the adversary.

■ We know from *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981), that error does not undermine the use of a judgment to preclude additional litigation. Some of the losing plaintiffs in an antitrust case appealed, and the rest did not. The court of appeals reversed, establishing that the judgment was erroneous. Still, the Supreme Court held, the parties who had neglected to appeal could not commence a fresh suit to take advantage of their confederates' victory. "The doctrine of res judicata serves vital public interests beyond any individual judge's

ad hoc determination of the equities in a particular case. There is simply 'no principle of law or equity which sanctions the rejection by a federal court of the salutary principle of *res judicata*.' *Heiser v. Woodruff*, 327 U.S. 726, 733, 66 S.Ct. 853, 856, 90 L.Ed. 970 (1946)." 452 U.S. at 401, 101 S.Ct. at 2429. See also, e.g., *Allied Industrial Workers Local 322 v. Johnson Controls, Inc.*, 969 F.2d 290, 292–93 (7th Cir.1992). None of the established exceptions to claim preclusion applies, and *Moitie* closes the door on ad hoc, equitable exceptions. Plaintiffs' inattention to the case they filed in the bankruptcy proceeding is their undoing.

AFFIRMED.