**SECA LEASING LIMITED PARTNERSHIP,**
Plaintiff,

v.

**NATIONAL CANADA FINANCE CORP., Defendant.**

No. 93 C 1526.

United States District Court,
N.D. Illinois, E.D.

Sept. 28, 1993.

Jay Ehrlich, Jay Ehrlich & Associates, Chicago, IL, for plaintiff.

Michael O'Rourke, John Griffith, Janet Steffes Baer, Jonathan Cyrluk, Winston & Strawn, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

LEINENWEBER, District Judge.

Plaintiff, SECA Leasing Limited Partnership ("SECA"), brought an amended complaint alleging two counts of breach of contract, one count of promissory estoppel, one count of unjust enrichment, and one count of breach of an implied-in-fact contract against defendant, National Canada

Finance Corporation ("National Canada"). Defendant has responded by filing a motion to dismiss, contending that the amended complaint is barred by res judicata, collateral estoppel, and, in any case, fails to state a claim upon which relief can be granted.

Integrated Plastic Technologies, Inc. ("Integrated") was a company that sold products for the manufacture of plastics. In 1988, Integrated executed a loan with Bank of New England, NA ("New England") providing for an extension of credit by New England to Integrated for up to $6,410,000.00. In May of 1990, New England assigned all of its rights in the loan to National Canada. As a result, National Canada held a blanket lien against substantially all of Integrated's assets in order to secure Integrated's debt to National Canada of approximately $6,400,000. On or about March 14, 1991, Integrated assigned all of its assets to William A. Brandt ("Brandt") as trustee for the benefit of its creditors. As a secured creditor and lienholder, National Canada consented to the assignment provided that the assets remained subject to its liens.

In a letter dated March 14th, 1991, Brandt entered into an agreement ("letter agreement") with Precision Plastics of Indiana ("Precision"). Under the terms of the letter agreement, Precision was to purchase all of the Integrated assets, except real estate, cash and trade names, for $3,050,000.00. However, before the sale could be finalized, Brandt was obligated to offer the assets for public sale no later than April 3, 1991. Therefore, Precision and Brandt built certain contingencies into the letter agreement. First, the agreement stipulated that Brandt would not accept any bid that was less than $3,250,000.00. Second, if Brandt sold the assets to anyone other than Precision, Integrated would pay Precision a breakup fee ("breakup fee") based on fifty percent of the difference between the actual sale price and the $3,050,000.00 letter agreement price. National Canada consented to the letter agreement. This consent included an agreement by National Canada to pay the breakup fee

to Precision if Brandt did not hold the requisite funds to meet this obligation. Brandt scheduled the public sale for April 3, 1991.

On April 1, 1991, certain creditors filed an involuntary bankruptcy case against Integrated in the U.S. Bankruptcy Court for the Southern District of Indiana, Indianapolis Division. Despite this development, Brandt proceeded with the auction but made any final sale subject to the approval of the bankruptcy court. Prior to the auction, Brandt explained the terms of the sale and of the letter agreement with Precision. He also explained that National Canada consented to the auction based on the same terms as the letter agreement with Precision.

Plaintiff submitted the high bid at $3,250,000.00. In accordance with the terms of the sale, SECA deposited ten percent earnest money. Brandt and Integrated proceeded with an application for approval before the bankruptcy court. During the interim, SECA performed extensive due diligence.

At the application proceeding, Brandt recommended that the bankruptcy court approve the sale to SECA. However, he acknowledged that he had received higher offers to purchase the assets between the time of the auction and the approval procedure. Numerous creditors as well as Precision objected to the sale of assets to SECA for the auction price. National Canada filed a limited objection to the proposed sale, but agreed to withdraw its objection if the court ordered all the proceeds from the sale to be paid directly to National Canada.

The bankruptcy court issued a continuance for further hearings and ordered Brandt and Integrated to conduct a second sale which was more widely publicized. At the second auction, in which both SECA and Precision actively participated, Precision outbid SECA. Brandt, Integrated, National Canada, and SECA appeared before the bankruptcy court during the second hearing on the sale of assets. Integrated and a committee made up of its creditors recommended that the bankruptcy court approve Precision's bid.

SECA objected to the sale of assets to Precision and alleged that Brandt, National Canada and Precision had engaged in conduct deliberately intended to prevent SECA's purchase of the assets. The bankruptcy judge found no evidence of such conduct. After considering both offers to purchase the assets, the judge denied SECA's application and approved the sale of assets to Precision. The court's findings of fact and conclusions of law are contained in a lengthy sale authorization order dated August 12, 1991.

SECA has now brought an amended complaint in this court comprised of five counts. Count I alleges a breach of contract by National Canada. SECA contends that the first public auction was subject to the same terms of the letter agreement between Brandt and Precision. SECA argues that since National Canada consented to that agreement and agreed to cover the breakup fee, it had a contractual duty to pay SECA the breakup fee when the assets were sold to Precision. Thus, SECA contends that because "the assets upon which SECA bid were ultimately purchased for $4,400,000.00 ... [National Canada] had a contractual duty to pay SECA a Breakup Fee in the amount of $575,000.00." Amended Complaint, ¶¶ 13–14.

Count II alleges a breach of contract by National Canada under an alternative theory. SECA contends that when National Canada consented to the letter agreement, it had a duty to support SECA's bid when it went before the bankruptcy judge for approval. Accordingly, SECA argues that National Canada breached its duty when it objected to the sale agreement. Thus, SECA claims that it is entitled to recovery on an expectation basis. Specifically, SECA is suing for damages in the amount of $2,100,000.00. This represents the estimated value of the Integrated assets minus SECA's bid.

In Count III, SECA claims that it relied upon National Canada's consent to the sale of assets when it performed due diligence. SECA seeks recovery for those costs in the amount of $52,601.30.

In Count IV, SECA claims a right to the breakup fee on an alternative theory of unjust enrichment. SECA argues that non-payment of the breakup fee by National Canada is inequitable and demands payment of $575,000.00.

In Count V, SECA contends that National Canada's original consent to the sale of assets and subsequent silence during the period that SECA performed due diligence amounts to an implied promise on the part of National Canada to support the sale to SECA in bankruptcy court. Thus, SECA argues, when National Canada objected to the sale, it breached a duty and caused SECA to suffer damages. Therefore, SECA demands $2,152,601.30. This represents lost profits from the purchase of the assets plus due diligence costs.

The amended complaint also requests that the court award SECA court costs, fees, and "such other and further relief as the court deems appropriate." Amended Complaint, ¶¶ 15, 27, 42, 60, and 73.

In its motion to dismiss the amended complaint, defendant first argues that plaintiff's claims are barred by the doctrine of res judicata. The Supreme Court has clearly set out the law regarding the doctrine of res judicata: "A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 2428, 69 L.Ed.2d 103 (1981). In *Lee v. City of Peoria*, 685 F.2d 196 (7th Cir. 1982), the Seventh Circuit restated the principle behind the doctrine of res judicata:

> The doctrine of res judicata is that a final judgment on the merits in a court of competent jurisdiction bars the same parties from relitigating not only issues that were in fact raised and decided but also all other issues which could have been raised in the prior action.

*Id.* at 199. Thus, in *Lee*, the Seventh Circuit made clear that claim preclusion can only be invoked where the final judgment on the merits has been dictated by a court *of competent jurisdiction.*

■ There is no contention by either side that the bankruptcy court did not have jurisdiction to hear claims related to the bankrupt. Moreover, it is clear that, as a matter of law, a bankruptcy sale order is a final judgment on the merits. *Matter of Met-L-Wood Corp.*, 861 F.2d 1012, 1016 (7th Cir.1988), *cert. denied*, 490 U.S. 1006, 109 S.Ct. 1642, 104 L.Ed.2d 157 (1989); *In re Sax*, 796 F.2d 994, 996–97 (7th Cir.1986).

With regard to the issue of the identities of the parties in the instant matter, *Matter of Met-L-Wood Corp.* is particularly relevant. In that case, the Seventh Circuit held that parties appearing before a bankruptcy court during the pre-order hearings were parties to the sale proceeding, and were therefore barred by res judicata from bringing suit to nullify the sale. 861 F.2d at 1016. Because both SECA and National Canada appeared before the bankruptcy court during that court's sale proceeding, they are both considered parties to the proceeding for purposes of claim preclusion. *Id.*

The merit of defendant's res judicata argument primarily rests upon: A) a comparison between the cause of action settled by the bankruptcy court and the one upon which SECA's amended complaint in this court rests, and B) a determination regarding the bankruptcy court's jurisdiction as it relates to the claims that SECA has brought in the instant case.

In comparing the cause of action in the bankruptcy case with the complaint in the instant case, it is instructive to review the Seventh Circuit's decisions in *Alexander v. Chicago Park Dist.*, 773 F.2d 850, 854, (7th Cir.1985), *cert. denied*, 475 U.S. 1095, 106 S.Ct. 1492, 89 L.Ed.2d 894 (1986) and, once again, in *Lee*. In the former case, the court stated that "[a] cause of action consists of 'a single core of operative facts' which give rise to a remedy." *Alexander*, 773 F.2d at 854 (citations omitted). In the latter case it held that

[e]ven though one group of facts may give rise to different claims for relief upon different theories of recovery, there remains a single cause of action. If the same facts are essential or the same evidence is needed to sustain both, then there is identity between the alleged different causes of action and res judicata bars the latter action.

*Lee v. City of Peoria*, 685 F.2d at 200, quoting *Morris v. Union Oil Co. of Cal.*, 96 Ill.App.3d 148, 157, 51 Ill.Dec. 770, 777, 421 N.E.2d 278, 285 (1981). Thus, claims need not have been actually litigated to be barred in an action; they need only have been available to plaintiff in the first suit.

The latter fact is only significant if the bankruptcy court had jurisdiction to rule on the claims SECA has brought in this case. A bankruptcy court has jurisdiction

when the dispute is "related to" the bankruptcy—meaning that it affects the amount of property available for distribution or the allocation of property among creditors ... The bankruptcy jurisdiction is designed to provide a single forum for dealing with all claims to the bankrupt's assets ... [I]t is the relation of dispute to estate, and not of party to estate, that establishes jurisdiction.

*Matter of Xonics, Inc.*, 813 F.2d 127, 131 (7th Cir.1987), *quoting* 28 U.S.C. § 157(c)(1).

■ The above cases provide significant guidance in resolving the present dispute. Before doing so, however, it is important to make clear the standard of review. In ruling upon a 12(b)(6) motion to dismiss, the court accepts as true the well-pleaded factual allegation of the complaint and views those allegations in a light most favorable to the non-moving party. *Gillman v. Burlington Northern R. Co.*, 878 F.2d 1020, 1022 (7th Cir.1989). Moreover, in such situations a court cannot look beyond the plaintiff's complaint and any documents incorporated by reference in that complaint. *U.S. v. Wood*, 925 F.2d 1580, 1581–82 (7th Cir.1991). The court may take judicial notice of matters of public record, such as the bankruptcy court's findings of fact and conclusions of law. *Id.* at 1582.

■ The court finds as follows. First, SECA is barred from relitigating the claims and issues related to Counts II and V. The

bankruptcy court entered a final judgment against SECA on the claims that SECA alleged in opposition to the court's approval of the sale of Integrated's assets to Precision. The bankruptcy court itself concluded that it ruled against SECA after the latter had a full and fair opportunity to state its claims before the court. It is obvious that Counts II and V of the amended complaint arise from the same operative facts that were litigated before the bankruptcy court. Plaintiff is thus barred by the doctrine of res judicata from litigating them in this court.

Second, the terms of the letter agreement, when viewed in light of the Supreme Court's opinion in *Federated Dep't Stores* and the Seventh Circuit's opinion in *Xonics,* make it clear that the doctrine of res judicata bars plaintiff from attempting to litigate Counts I and IV, the claims related to the breakup fee, in this court. The amended complaint alleges that paragraph 4(d) of the letter agreement stated,

"(d) The Breakup Fee shall be payable by Trustee to the extent it holds in its possession sufficient funds therefor from the sale of the Assets. In the event the requisite funds shall have been paid to Lender then by execution of this Agreement, Lender agrees to pay the Breakup Fee to Precision, if such fee is otherwise payable hereunder."

Amended Complaint, ¶ 9. The court has carefully combed through the relevant documents (including the bankruptcy court's lengthy sale order) and finds no evidence that plaintiff brought a claim for the breakup fee before the bankruptcy court. Since paragraph 4(d) demonstrates that the bankrupt's estate was the first route for recovery for the breakup fee, this was a matter which was within the jurisdiction of the bankruptcy court. As *Federated Dep't Stores* makes clear, because plaintiff's claims related to the breakup fee could have been brought before the bankruptcy court, the plaintiff is barred by the doctrine of res judicata from attempting to litigate them before this court.

Third, all five counts are barred by the doctrine of res judicata on alternative grounds. The Seventh Circuit has ruled that "claims 'arising in' the bankruptcy proceeding are securely within the bankruptcy court's power." *Horwitz v. Alloy Automotive Co.,* 992 F.2d 100, 103 (7th Cir.1993), *quoting* 28 U.S.C. § 157(a). In *Horwitz,* the Seventh Circuit concluded that the claims at issue arose in the bankruptcy proceeding because "[n]o claims that arose prior to the commencement of the bankruptcy case are before us." *Horwitz,* 992 F.2d at 103. The same is true here. The bankruptcy proceedings against SECA commenced on April 1, 1991. On April 3, 1991, SECA was warned, as all bidders at the auction were, that the acceptance of bids was subject to the approval of the bankruptcy court. Since all of the claims made by SECA "arose in" the bankruptcy proceeding, SECA is barred from litigating them before this court.

■ It is worth noting that Count III must also be dismissed on grounds related to defendant's third argument (i.e., that, under Rule 12(b)(6), it fails to state a claim upon which relief can be granted). Plaintiff claims damages arising from its reliance upon "the promise of [National Canada] that it consented to the sale of the assets of [Integrated] to SECA." Amended Complaint, ¶ 36. However, all bidders at the auction for the purchase of the assets of Integrated were warned that the acceptance of any bid was subject to the approval of the bankruptcy court. As a matter of law, "[r]eliance is not reasonable where the plaintiff has knowledge that final approval of the deal may be withheld ...." *Bercoon, Weiner, Glick and Brook v. Manufacturers Hanover Trust Co.,* 818 F.Supp. 1152, 1160 (N.D.Ill1993), *citing M.T. Bonk Co. v. Milton Bradley Co.,* 945 F.2d 1404, 1408 (7th Cir.1991) (Plaintiff's detrimental reliance was unreasonable because he had been informed "about the review process and the possibility that a product considered for licensing could be canceled at any time during the process."). SECA was in a position to know that its bid, although accepted at the auction, could be rejected by the bankruptcy court. Thus,

Count III of the amended complaint is dismissed on alternative grounds.

If SECA believed that the bankruptcy court was in error with regard to its grievance against National Canada, it should have appealed the case. In the alternative, SECA should have made a motion to vacate the verdict. Because the deadlines for these two courses of action have now passed, SECA seeks redress in this court. However, this court cannot serve as a forum in which to avoid the consequence of the passing of those deadlines.

For the above reasons, defendant's motion to dismiss is granted with respect to each count of the amended complaint.

IT IS SO ORDERED.