*Sacerdote v. Cammack Larhette Advisors, LLC*

# In the

# United States Court of Appeals

## For the Second Circuit

————

AUGUST TERM, 2018

ARGUED: APRIL 8, 2019
DECIDED: OCTOBER 1, 2019

No. 18-1558

DR. ALAN SACERDOTE, DR. HERBERT SAMUELS, MARIE E. MONACO, MARK CRISPIN MILLER, DR. SHULAMITH LALA STRAUSSNER, DR. JAMES B. BROWN, INDIVIDUALLY AND AS REPRESENTATIVES OF A CLASS OF PARTICIPANTS AND BENEFICIARIES ON BEHALF OF THE NYU SCHOOL OF MEDICINE RETIREMENT PLAN FOR MEMBERS OF THE FACULTY, PROFESSIONAL RESEARCH STAFF AND ADMINISTRATION AND THE NEW YORK UNIVERSITY RETIREMENT PLAN FOR MEMBERS OF THE FACULTY, PROFESSIONAL RESEARCH STAFF AND ADMINISTRATION,
*Plaintiffs-Appellants,*

*v.*

CAMMACK LARHETTE ADVISORS, LLC,
*Defendant-Appellee,*

RETIREMENT PLAN COMMITTEE, RICHARD BING, MICHAEL BURKE, CATHERINE CASEY, MARTIN DORPH, SABRINA ELLIS, THOMAS FEUERSTEIN, ANDREW GORDON, PATRICIA HALLEY, TIM HESLER, KATHLEEN JACOBS, MARINA KARTANOS, ANN KRAUS, MARGARET MEAGHER, CYNTHIA NASCIMENTO, NANCY SANCHEZ, TINA SURH, LINDA WOODRUFF, MAURICE MAERTENS, JOSEPH MONTELEONE, RAY

OQUENDO, CHRIS TANG, NEW YORK UNIVERSITY SCHOOL OF
MEDICINE, NYU LANGONE HOSPITALS, NYU LANGONE HEALTH
SYSTEM,
*Defendants.*[*]

————

Appeal from the United States District Court
for the Southern District of New York.
No. 17 Civ. 8834 – Katherine B. Forrest, *Judge*.

————

Before: WALKER, CALABRESI, AND LIVINGSTON, *Circuit Judges*.

————

Plaintiffs filed an action, which we refer to as *Sacerdote I*, against New York University ("NYU") alleging violations of ERISA in connection with two retirement plans sponsored by NYU. The district court dismissed most, but not all, of the causes of action against NYU. Plaintiffs then filed this action, which we refer to as *Sacerdote II*, against a variety of affiliates of NYU and Cammack Larhette Advisors, LLC, alleging substantially the same claims as those in *Sacerdote I*, including the dismissed claims. Cammack is an independent investment management company that was hired by NYU to provide investment advice on the retirement plans. The district court dismissed all of the claims against all of the NYU-affiliated defendants, as well as Cammack, on the grounds that a plaintiff has no right to maintain two actions on the same subject, against the same parties, at the same time. The district court concluded that even though Cammack and the other defendants in *Sacerdote II* were not defendants in *Sacerdote I*, all of them were in privity with defendant NYU in *Sacerdote I* because they had a

[*] The Clerk of Court is respectfully directed to amend the official caption as listed above.

sufficiently close relationship with NYU and their interests were aligned with those of NYU. Plaintiffs appealed only the dismissal as to Cammack. We conclude that Cammack and NYU are not in privity, and we now VACATE and REMAND the district court's order as to Cammack.

————

SEAN E. SOYARS (Jerome J. Schlinchter, *on the brief*), Schlichter Bogard & Denton LLP, St. Louis, MO, *for Plaintiffs-Appellants*.

CHARLES M. DYKE, Nixon Peabody LLP, San Francisco, CA (Kristin Marie Jamberdino, Nixon Peabody LLP, New York, NY, *on the brief*), *for Defendant-Appellee.*

————

JOHN M. WALKER, JR., *Circuit Judge*:

Plaintiffs filed an action, which we refer to as *Sacerdote I*, against New York University ("NYU") alleging violations of ERISA in connection with two retirement plans sponsored by NYU. The district court dismissed most, but not all, of the causes of action against NYU. Plaintiffs then filed this action, which we refer to as *Sacerdote II*, against a variety of affiliates of NYU and Cammack Larhette Advisors, LLC, alleging substantially the same claims as those in *Sacerdote I*, including the dismissed claims. Cammack is an independent investment management company that was hired by NYU to provide investment advice on the retirement plans. The district court dismissed all of the claims against all of the NYU-affiliated defendants, as well as Cammack, on the grounds that a plaintiff has no right to maintain two actions on the same subject, against the same parties, at the same time. The district court

concluded that even though Cammack and the other defendants in *Sacerdote II* were not defendants in *Sacerdote I*, all of them were in privity with defendant NYU in *Sacerdote I* because they had a sufficiently close relationship with NYU and their interests were aligned with those of NYU. Plaintiffs appealed only the dismissal as to Cammack. We conclude that Cammack and NYU are not in privity, and we now VACATE and REMAND the district court's order as to Cammack.

**BACKGROUND**

This appeal concerns two actions that were filed in the Southern District of New York and assigned to Judge Katherine Forrest.[1] We refer to the two actions as *Sacerdote I* (No. 16-cv-06284) and *Sacerdote II* (No. 17-cv-8834). Plaintiffs in both actions are six professors at New York University ("NYU") or the New York University School of Medicine who participated in two ERISA-governed retirement plans sponsored by NYU ("the plans").

*I.      Sacerdote I*

Plaintiffs commenced the first action on August 9, 2016, against NYU only, and alleged breaches of the duties of loyalty and prudence under ERISA based on unreasonable administrative fees, unreasonable investment management fees and performance losses, and failure to monitor unnamed co-fiduciaries.[2]

On November 9, 2016, plaintiffs amended their complaint to allege breaches of ERISA's duties of loyalty and prudence, as well as its prohibited transaction rules, by: locking the plans into an imprudent investment and recordkeeping arrangement with TIAA-

---

[1] Judge Forrest resigned from the bench in September 2018. The case has been reassigned to Judge Analisa Torres.

[2] *See* Complaint, *Sacerdote I,* 16-cv-06284 (S.D.N.Y. Aug. 9, 2016), ECF No. 1.

CREF (Counts I and II); causing the plans' participants to pay unreasonable administrative fees to TIAA-CREF and Vanguard (Counts III and IV); and causing the plans' participants to pay unreasonable investment management, marketing, distribution, mortality, and expense risk fees, and incur unreasonable performance losses (Counts V and VI).[3] Plaintiffs also alleged that NYU failed to properly monitor unnamed co-fiduciaries to the plans (Count VII).[4] The amended complaint, like its predecessor, named NYU as the only defendant.

On August 25, 2017, the district court granted in part and denied in part NYU's motion to dismiss the amended complaint. The district court dismissed all claims except those alleging certain breaches of ERISA's duties of loyalty and prudence in Counts III and V.[5] With respect to Count VII, alleging NYU's failure to properly monitor unnamed co-fiduciaries, the district court found that plaintiffs' failure to name any co-fiduciary rendered the claim materially deficient.[6] However, the district court invited plaintiffs to file for reconsideration if they possessed additional facts to support their co-fiduciary claim.[7]

While NYU's motion to dismiss was pending, plaintiffs learned that NYU had delegated responsibility for administering the plans to a Retirement Plan Committee (the "Committee"), which consisted of nine officers of NYU and NYU Langone Medical Center. Armed with this new information, and in response to the district court's invitation, plaintiffs moved on September 8, 2017, for reconsideration of the district court's dismissal. The same day, plaintiffs moved for leave to

---

[3] *See* Amended Complaint, *Sacerdote I*, ECF No. 39.

[4] *See id.*

[5] *See* Opinion & Order, *Sacerdote I*, ECF No. 79.

[6] *Id.* at 34–35.

[7] *Id.* at 35.

file a second amended complaint, in which they sought to add the Committee and its nine individual members, as defendants, and to add additional facts to bolster the co-fiduciary claim.

On October 17, 2017, the district court denied plaintiffs' motion for leave to amend.[8] It concluded that plaintiffs failed to demonstrate good cause for why they failed to amend earlier, given that the defendant had disclosed the existence of the Committee and its members in November 2016. Two days later, the district court denied plaintiffs' motion for reconsideration for substantially the same reason.[9]

### II.    *Sacerdote II*

On November 13, 2017, the same plaintiffs filed a new action— *Sacerdote II*—alleging substantially the same seven claims alleged in *Sacerdote I*, including those claims the district court dismissed in its August 25, 2017 decision.[10] The *Sacerdote II* complaint named as defendants: NYU Langone Hospitals, NYU Langone Health System, the Retirement Plan Committee, and twenty-one past or present members of the Committee. It did not name NYU. The *Sacerdote II* complaint also added a new claim and specifically identified the Committee and its members as the co-fiduciaries that NYU Langone Hospitals and NYU Langone Health System allegedly failed to monitor.

On December 20, 2017, the *Sacerdote II* defendants moved to dismiss the action as duplicative of *Sacerdote I*. Instead of responding to the motion to dismiss, plaintiffs amended the *Sacerdote II* complaint on January 10, 2018. The amended complaint removed NYU Langone

---

[8] *See* Order, *Sacerdote I*, ECF No. 100.

[9] *See* Order, *Sacerdote I*, ECF No. 101.

[10] *See* Complaint, *Sacerdote II*, No. 17-cv-08834 (S.D.N.Y. Nov. 13, 2017), ECF No. 1.

Hospitals and NYU Langone Health System as defendants and added the New York University School of Medicine ("NYU School of Medicine") as a defendant.[11]  The amended complaint, for the first time, also named Cammack Larhette Advisors, LLC ("Cammack"), as a defendant, and alleged that Cammack was a co-fiduciary; that Cammack breached its fiduciary duties under ERISA; and that both Cammack and the NYU School of Medicine, as co-fiduciaries, were liable for the other's breaches.  The amended complaint also added new claims.

On January 24, 2018, all defendants—except for Cammack—(the "NYU defendants") responded to the *Sacerdote II* amended complaint with a new motion to dismiss.  The NYU defendants argued that the *Sacerdote II* action was duplicative of the *Sacerdote I* action and was an impermissible attempt to circumvent the district court's rulings in *Sacerdote I*, which prohibited plaintiffs from amending the complaint to replead the dismissed claims and add the new defendants.  Before Cammack responded to the amended complaint, the district court entered an opinion and order dismissing the entire action against the NYU defendants and Cammack as duplicative of *Sacerdote I*.[12]  The district court held that the NYU defendants in *Sacerdote II* were in privity with NYU in *Sacerdote I*, and that *Sacerdote II*, which alleged substantially the same claims and facts as the prior action, was duplicative of *Sacerdote I*.  With respect to Cammack, the district court held that the claims against Cammack "should have been brought by joining Cammack earlier in the *Sacerdote I* litigation."[13]

---

[11] *See* Amended Complaint, *Sacerdote II*, ECF No. 105.

[12] *See* Opinion & Order, *Sacerdote II*, ECF No. 137; *see also* No. 17-cv-8834 (KBF), 2018 WL 1054573 (S.D.N.Y. Feb. 23, 2018).

[13] *Sacerdote II*, ECF No. 137 at 7.

On March 7, 2018, plaintiffs moved for reconsideration of the district court's *sua sponte* dismissal as to Cammack before Cammack had responded to the amended complaint. Plaintiffs argued they were entitled to assert the same claims against a separate, independent defendant, and that the factors the district court cited to support a finding of privity between the NYU defendants in *Sacerdote I* and *II* did not apply to Cammack, an independent entity not related to NYU. In response, the district court ordered Cammack to file a letter motion for dismissal and granted plaintiffs an opportunity to respond, which they did. Cammack argued that like the NYU defendants in *Sacerdote II*, it was in privity with NYU, the defendant in *Sacerdote I*, because Cammack and NYU were in contractual privity, the parties' interests were fully aligned, and the defenses of NYU would be fully dispositive of any claims against Cammack, if successful.

On March 22, 2018, the district court adhered to its judgment dismissing Cammack from *Sacerdote II*.[14] The district court concluded that Cammack was in privity with NYU because Cammack and NYU's interests were aligned and they had a "sufficiently close relationship . . . to justify preclusion."[15] The district court rejected plaintiffs' argument that "Cammack need not have been added [as a defendant in *Sacerdote I*] and that they can maintain a separate suit" against Cammack.[16]

---

[14] *See* Mem. Decision & Order, *Sacerdote II*, ECF No. 147; *see also* No. 17-cv-8834 (KBF), 2018 WL 6253366 (S.D.N.Y. Mar. 22, 2018).

[15] 2018 WL 6253366, at *2 (internal quotation marks omitted).

[16] *Id.*

Plaintiffs now appeal the district court's dismissal of Cammack from *Sacerdote II*.[17]

**DISCUSSION**

We must determine in this case whether the district court correctly applied the privity rule in the context of the rule against duplicative litigation. More precisely, the question is whether the claims against Cammack in *Sacerdote II*—which are substantially similar to the claims against NYU in *Sacerdote I*—should have been barred by the rule against duplicative litigation on the basis of Cammack's alleged privity with NYU. We begin with a discussion of the rule against duplicative litigation and the privity rule, and then assess whether the district court properly applied the two rules to conclude that Cammack was in privity with NYU and that *Sacerdote II* was therefore barred by the rule against duplicative litigation.

**I.      The Rule Against Duplicative Litigation**

"As part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit."[18] This is because a plaintiff has "no right to maintain two actions on the same subject in the same court, against the same defendant at the same time."[19] In order for the rule to be properly invoked, however, "the case must be the same."[20] As the Supreme Court recognized over a century ago, "[t]here must be the same

---

[17] Plaintiffs initially also appealed the dismissal of the NYU defendants from *Sacerdote II*, but have since dropped that argument following a bench trial on the surviving claims in *Sacerdote I*, in which the district court ruled in favor of NYU on all claims. That decision in *Sacerdote I* is also up on appeal, but has not yet been argued.

[18] *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000).

[19] *Id.* at 139.

[20] *The Haytian Republic*, 154 U.S. 118, 124 (1894).

parties, or, at least, such as represent the same interests; there must be the same rights asserted and the same relief prayed for; the relief must be founded upon the same facts, and the title, or essential basis, of the relief sought must be the same."[21]

This rule, known as the rule against duplicative litigation, sometimes termed the rule against claim-splitting, is "distinct from but related to the doctrine of claim preclusion or *res judicata*."[22] The rule and the doctrine serve similar goals of "foster[ing] judicial economy," "protect[ing] the parties from vexatious and expensive litigation," and ensuring the "comprehensive disposition of litigation."[23] As the Seventh Circuit put it, "[c]laim splitting is an *aspect* of the law of preclusion. Lawyers often use the words 'res judicata' to summon up all aspects of preclusion."[24] Because they are animated by similar policy goals and concerns, we frequently apply principles governing the doctrine of claim preclusion to the rule against duplicative litigation.[25]

The vital difference between the rule against duplicative litigation and the doctrine of claim preclusion, however, is that the former can only be raised to bar one of two suits that are both still

---

[21] *Id.* (internal quotation marks omitted).

[22] *Curtis,* 226 F.3d at 138.

[23] *Id.* (internal quotation marks omitted).

[24] *Horwitz v. Alloy Auto. Co.*, 992 F.2d 100, 103 (7th Cir. 1993).

[25] *See Davis v. Norwalk Econ. Opportunity Now, Inc.,* 534 F. App'x 47, 48 (2d Cir. 2013) (summary order) ("While the rule against duplicative litigation is distinct from claim preclusion, the former analysis borrows from the latter to 'assess whether the second suit raises issues that should have been brought in the first.'" (quoting *Curtis,* 226 F.3d at 138–40) (internal citations omitted)); *see also* 18 Charles A. Wright, Arthur R. Miller, et al., *Fed. Prac. & Proc.* § 4404 (3d ed.), Westlaw ("One growing trend is to import the tests of claim preclusion into a 'claim-splitting' doctrine that enables a court, as a matter of discretion, to dismiss an action that presents the same claim, as measured by claim-preclusion tests, as another pending action.").

pending; the latter is generally[26] raised, after a prior suit is resolved on the merits, to preclude a party (or its privy) from relitigating claims in a subsequent suit that were or could have been raised in the prior action.[27]

## II. Privity Rule

Just as we typically do not allow the doctrine of claim preclusion to bind nonparties to a judgment because they have "not had a full and fair opportunity to litigate the claims and issues settled in that suit,"[28] we generally do not apply the rule against duplicative litigation when the defendants in two similar actions are different.[29] Indeed, a plaintiff has "as many causes of action as there are defendants to pursue."[30] As the Restatement (Second) of Judgments states:

> When a person suffers injury as the result of the concurrent or consecutive acts of two or more persons, he has a claim against each of them. If he brings an action against one of them, he is required [by the doctrine of claim preclusion] to present all the evidence and theories

---

[26] We say that claim preclusion "generally" is only raised after one suit has been resolved on the merits because the doctrine can apply while two similar suits are pending when the district court denies on the merits a motion to amend the complaint to add new claims while permitting the existing claims to proceed. In such a case, the denial of leave to amend on the merits, as opposed to a denial on procedural grounds such as timeliness, operates as a bar. The plaintiff cannot file a new, second action raising those denied claims. *See Curtis,* 226 F.3d at 139. That precise scenario does not apply to this case, however, because plaintiffs never sought, and were never denied, leave to amend their complaint in *Sacerdote I* to add Cammack as a defendant.

[27] *Curtis,* 226 F.3d at 138.

[28] *Taylor v. Sturgell,* 553 U.S. 880, 892 (2008) (internal quotation marks omitted).

[29] *See The Haytian Republic,* 154 U.S. at 124 (the rule against duplicative litigation may only be invoked when the cases are the same and involve "the same parties, or, at least, such as represent the same interests").

[30] *N. Assur. Co. of Am. v. Square D Co.,* 201 F.3d 84, 88–89 (2d Cir. 2000).

of recovery that might be advanced in support of the claim against the obligor . . . . But the claim against others who are liable for the same harm is regarded as separate.[31]

In other words, if a plaintiff suffers the same harm at the hands of two defendants, the plaintiff may institute one suit against one defendant and a separate suit against another defendant alleging that each caused his injury.[32]  This is known as the rule against nonparty preclusion.[33]

There are specific exceptions to this rule, however, that recognize narrow circumstances in which applying a preclusion doctrine to a nonparty is appropriate, fair, and does not violate the nonparty's due process rights.  When any of these circumstances is present, the parties are said to be in privity.[34]  In the context of claim preclusion, if a party to an action is found to be in privity with a party to a previous action, then the "privy is bound with respect to all the issues that were raised or could have been raised in the previous lawsuit."[35]

The circumstances sufficient to invoke the privity rule have evolved over time.  In 2008, the Supreme Court distilled the current

---

[31] Restatement (Second) of Judgments § 49 (1982).

[32] *See N. Assurance,* 201 F.3d at 88–89.  We do not consider here how other doctrines and rules of civil procedure, such as joinder of parties, might impact a plaintiff's ability to bring separate claims against different defendants regarding the same harm caused by both.

[33] *See Taylor*, 553 U.S. at 892.

[34] *See id.* at 898 n.8 ("The substantive legal relationships justifying preclusion are sometimes collectively referred to as 'privity.'  The term 'privity,' however, has also come to be used more broadly, as a way to express the conclusion that nonparty preclusion is appropriate on any ground." (internal citations omitted)); *see also* Wright & Miller § 4449 ("[T]he privity label simply expresses a conclusion that preclusion is proper.").

[35] *Chase Manhattan Bank, N.A. v. Celotex Corp.,* 56 F.3d 343, 346 (2d Cir. 1995).

"recognized exceptions" to the rule against nonparty preclusion into six categories: (1) agreements by a nonparty to be bound by the determination of issues in an action between others; (2) certain pre-existing substantive legal relationships based in property law between the nonparty and the party, such as preceding and succeeding owners of property, bailee and bailor, and assignee and assignor; (3) representative suits where the nonparty's interest was adequately represented[36] by a party with the same interests, such as class actions and suits brought by trustees, guardians, and other fiduciaries; (4) when a nonparty has assumed control over the litigation in which the judgment was rendered; (5) when a nonparty is acting as a proxy, agent, or designated representative of a party bound by a judgment; and (6) when a statutory scheme expressly forecloses successive litigation by nonlitigants, so long as the scheme comports with due process.[37]

Although most of the treatises and cases—including *Taylor*—that discuss the privity rule do so in the context of claim preclusion, the same principles apply in the context of the rule against duplicative litigation. In *The Haytian Republic*, the Supreme Court implicitly recognized that the privity rule applies to the rule against duplicative litigation when it stated that the rule may only be invoked when the two pending suits have "the same parties, or, at least, *such as represents the same interests*."[38]   Since then, courts, including ours, have

---

[36] The term "adequate representation" was further defined by the Court as requiring certain procedural protections. These requirements are discussed in greater detail below. *See infra,* notes 64–66 and accompanying text.

[37] *Taylor,* 553 U.S. at 893–95.

[38] 154 U.S. at 124 (emphasis added). As illustrated by *Taylor*, the privity rule has evolved over time such that a party merely representing the same interest as a nonparty, without more, is no longer sufficient to justify a finding of privity and to apply a preclusion doctrine to a nonparty. *See infra,* notes 64–66 and accompanying text. At the time of *The Haytian Republic,* however, this was a

frequently applied principles originating in the doctrine of claim preclusion to the similar context of the rule against duplicative litigation.[39]   We can think of no reason—and the parties have presented none—why the principles underlying the privity rule in the context of other preclusion doctrines should not apply equally in the context of the rule against duplicative litigation.

### III.   Standard of Review

We review *de novo* both a district court's dismissal of a complaint[40] and its ruling on preclusion.[41]   At the dismissal stage, we must accept as true all factual claims in the complaint and draw all reasonable inferences in the plaintiff's favor.[42]   We review for abuse of discretion a district court's decision to stay or dismiss a suit as duplicative of another federal court suit.[43]   However, when a district court's determination that parties are in privity rests on a "purely legal proposition," we review that decision, like all questions of law, *de novo*.[44]   Moreover, a district court necessarily abuses its discretion when it makes an error of law.[45]

---

sufficient condition to invoke the privity rule and bar a nonparty from instituting a similar suit, and demonstrates that the concepts of privity and nonparty preclusion apply to the rule against duplicative litigation.

[39] *See N. Assur.*, 201 F.3d at 88–89 (declining to apply the rule against duplicative litigation to bar a suit by a plaintiff against one defendant that was identical to, and arose out of the same events as, another suit by the same plaintiff against a different defendant and alleged joint tortfeasor because the parties were not in privity); *see also Davis*, 534 F. App'x at 48; *Vancouver v. NCO Fin. Srvs., Inc.*, 857 F.3d 833, 841–42 (11th Cir. 2017) (asking whether the case "involves the same parties and their privies" in applying the rule against duplicative litigation); Wright & Miller § 4404.

[40] *See Singh v. Cigna Corp.*, 918 F.3d 57, 62 (2d Cir. 2019).

[41] *See Hoblock v. Albany Cty Bd. of Elections*, 422 F.3d 77, 93 (2d Cir. 2005).

[42] *See Singh*, 918 F.3d at 62.

[43] *See Curtis*, 226 F.3d at 138.

[44] *See Hoblock*, 422 F.3d at 93–94.

[45] *See United States v. Hasan*, 586 F.3d 161, 167–68 (2d Cir. 2009).

**IV.   The District Court's Finding of Privity Between NYU and Cammack**

There is no dispute that the facts and legal claims asserted in *Sacerdote II* are substantially similar to those asserted in *Sacerdote I*. Nor is there a dispute that NYU and Cammack are different parties. The question, therefore, is whether the district court erred in concluding that NYU and Cammack are in privity, such that the rule against duplicative litigation should apply to bar recovery against Cammack in *Sacerdote II*. We conclude that the district court did so err.

The district court concluded that NYU and Cammack were in privity based on the following facts taken from the amended complaint:

> Cammack has provided advisory services to NYU since 2009. The Amended Complaint alleges that Cammack is a co-fiduciary to the Plans, and is a party to a contract that requires it to advise NYU on investment options. It also claims that Cammack participated in and enabled the NYU defendants to commit a number of the alleged breaches of fiduciary duty by providing imprudent investment advice, and by failing to make any reasonable effort under the circumstances to remedy the breaches . . . . [However,] NYU and Cammack have different states of incorporation and different principal places of business, and [plaintiffs allege that] they took independent actions with regard to the Plans' losses.[46]

The district court found that these facts supported the conclusion that "Cammack has a 'sufficiently close relationship' to NYU to justify

---

[46] *Sacerdote II*, 2018 WL 6253366, at *1–2 (internal citations and quotation marks omitted).

preclusion."[47] It also rejected plaintiffs' argument that Cammack and NYU's interests will "sharply diverge" to the extent that Cammack's advice was imprudent.[48]

We disagree that Cammack and NYU's interests are sufficiently identical to support a finding of privity. Under ERISA's co-fiduciary provision, a co-fiduciary is only liable for another fiduciary's independent breach if the co-fiduciary (1) knowingly participates in or conceals the breaching act or omission of another fiduciary; (2) enables another fiduciary to breach by failing to comply with ERISA's "prudent man" standard of care; or (3) knows of another fiduciary's breach and fails to make reasonable efforts to remedy the breach.[49] Unless this is so, the co-fiduciaries' interests are not aligned. Here, the bases for liability as to NYU and Cammack are not necessarily the same; it is possible that one party could be found liable and the other not.

Indeed, as plaintiffs plausibly pleaded, Cammack and NYU had separate and distinct responsibilities as co-fiduciaries to the plans, and could be found liable for plaintiffs' injuries for separate reasons. "Cammack's potential liability arises from providing flawed advice to the Committee . . . ."[50] On the other hand, "NYU's [potential] liability would arise from failing to independently investigate the merits of the Plans' investments, or failing to determine whether it was reasonable to rely on Cammack."[51]

---

[47] *Id.* at *2 (quoting *Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 368 (2d Cir. 1995).

[48] *Id.*

[49] 29 U.S.C. § 1105(a); *see also* 29 U.S.C. § 1104(a)(1) (defining the "prudent man" standard of care).

[50] Appellant's Br. at 18.

[51] *Id.* at 18–19.

A reasonable trier of fact could find that Cammack provided flawed advice to NYU and was liable for plaintiffs' losses, while also finding that NYU reasonably relied on Cammack's advice, notwithstanding its flawed nature. Conversely, a reasonable trier of fact could find that Cammack provided reasonably prudent advice to NYU, but that NYU imprudently rejected Cammack's advice or failed to properly implement Cammack's investment recommendations. In these plausible scenarios, NYU and Cammack's interests would surely diverge, to the point where it would be in each of their interests to place the blame on the other. Especially at the pleading stage, it was error for the district court to accept Cammack's argument that its interests were identical to those of NYU over plaintiffs' plausible assertions to the contrary.[52]

Even assuming that Cammack and NYU have a sufficiently close relationship and identical interests, the district court further erred because the presence of these two conditions alone is insufficient as a matter of law to support a finding of privity. The district court relied primarily on *Central Hudson* for the proposition that identical interests and a sufficiently close relationship are *all* that is required to find parties in privity. That case, however, does not support that proposition. *Central Hudson* held that to determine whether nonparty preclusion is warranted, a court must also "inquire

_____

[52] In its brief, Cammack argues that the district court's determination that NYU and Cammack had identical interests was proper because plaintiffs "never made any showing" "that NYU's interests will sharply diverge from Cammack's." *See* Appellee's Br. at 29. But the burden of proving privity and preclusion is on the party asserting that affirmative defense. *See Taylor*, 553 U.S. at 907. It was therefore Cammack's burden to prove that its interests were aligned with NYU's. We conclude it has failed to do so because plaintiffs have plausibly alleged realistic scenarios in which Cammack and NYU's interests are not identical, but, in fact, materially conflict.

whether a [non]party controlled or substantially participated in the control of the presentation on behalf of a party to the prior action."[53]

The Supreme Court's decision in *Taylor* is instructive. In recognizing the six circumstances sufficient to establish privity, the Court rejected a proposed seventh category called virtual representation.[54] The contours of a proposed virtual representation category have differed from circuit to circuit.[55] The formulation rejected by the Court in *Taylor* would have found a nonparty to be in privity with a party if the nonparty (1) had the same interests as the party; (2) was adequately represented by the party; and (3) at least one of the following conditions was present: (a) a close relationship between the nonparty and party; (b) substantial participation by the nonparty in the other action; or (c) tactical maneuvering by the nonparty to avoid preclusion.[56] The Court refused to adopt this virtual representation exception to the rule against nonparty preclusion, stating that it would be "at odds with the constrained approach to nonparty preclusion" adopted by the Court's prior decisions, and would circumvent the protections guaranteed by the Due Process Clause.[57] In holding that that NYU and Cammack were in privity based solely on their sufficiently close relationship and identical interests, the district court essentially adopted an even broader formulation of virtual representation than that rejected by the Court in *Taylor*. This was in error.

---

[53] *Cent. Hudson*, 56 F.3d at 368 (modifications incorporated) (internal quotation marks omitted).

[54] *Taylor*, 553 U.S. at 895–96.

[55] *See id.* at 889.

[56] *Id.* 889–90.

[57] *Id.* at 898; *see also id.* at 901.

Moreover, none of the six circumstances that *Taylor* recognized as permitting a finding of privity are present here. There is no allegation or evidence that Cammack agreed to be bound by the disposition of *Sacerdote I*,[58] nor that Cammack assumed control over NYU's defense in *Sacerdote I*,[59] nor that Cammack is a designated representative or proxy of NYU.[60] And no applicable statutory scheme expressly forecloses successive litigation by or against nonlitigants.[61]

We also conclude that NYU and Cammack do not have the type of property rights-based "pre-existing substantive legal relationship" that could justify a finding of privity in this case.[62] The contract between NYU and Cammack obliges Cammack only to provide investment advisory services to NYU with respect to the plans. It does not create a property rights-based relationship akin to those recognized in *Taylor* that could render a nonparty subject to the judgment of a party with which it is in privity.[63] No property rights were transferred, assigned, or delegated to or from NYU or Cammack, and the claims in *Sacerdote I* and *II* did not concern NYU and Cammack's mutual or successive rights in the same property. Thus, the contractual and co-fiduciary relationships between NYU and Cammack are insufficient to find the parties in privity.

Finally, we conclude that the representative suit exception to a plaintiff's right to sue each defendant separately does not apply here. The Supreme Court has described this exception as applying only in

---

[58] *See id.* at 893–94.

[59] *See id.* at 895.

[60] *See id.*

[61] *See id.*

[62] *See id.* at 894 (internal quotation marks omitted).

[63] *See id.*

"certain limited circumstances" when the nonparty is "adequately represented by someone with the same interests who was a party to the suit," such as class actions and suits brought by trustees, guardians, and other fiduciaries.[64]  A party's representation of a nonparty is considered "adequate" for preclusion purposes "only if, at a minimum: (1)   [t]he interests of the nonparty and her representative are aligned; and (2) either the party [in the first suit] understood herself to be acting in a representative capacity [of the nonparty] or the original court took care to protect the interests of the nonparty."[65]  Adequate representation often also requires "(3) notice of the original suit to the persons alleged to have been represented."[66]

Cammack has made no argument that NYU understood itself to be acting in a representative capacity for Cammack in litigating *Sacerdote I*, or that the district court took care to protect the interests of Cammack in *Sacerdote I*.[67]  Without these procedural protections, privity cannot be said to exist on the basis that NYU adequately represented Cammack's interests in *Sacerdote I*, such that plaintiffs are now precluded by the rule against duplicative litigation from asserting claims against Cammack arising out of the same nucleus of acts at issue in *Sacerdote I*.

In summary, because the relationship between NYU and Cammack does not fit into any of the privity categories recognized by the Supreme Court in *Taylor* as sufficient to justify an exception to the rule against nonparty preclusion, the district court erred in concluding that NYU and Cammack were in privity.  It is insufficient

---

[64] *Id.* at 894–95 (modifications incorporated) (internal quotation marks omitted).

[65] *Id.* at 900 (internal quotation marks and citations omitted).

[66] *Id.*

[67] Because preclusion is an affirmative defense, it was Cammack's burden to plead and prove that these procedural protections were in place to justify nonparty preclusion under the representative suit exception.  *See id.* at 907.

as a matter of law to find two parties in privity based solely on the fact that they share a sufficiently close relationship and have aligned interests. This is precisely the type of virtual representation theory of privity that the Supreme Court rejected in *Taylor*. Because NYU and Cammack are not in privity, the district court's dismissal of Cammack from *Sacerdote II* pursuant to the rule against duplicative litigation was legal error, and thus an abuse of discretion, and a violation of the fundamental principle that a plaintiff has "as many causes of action as there are defendants to pursue."[68]

## CONCLUSION

We have considered the parties' other arguments and find them to be without merit. We therefore VACATE the district court's order dismissing Cammack from *Sacerdote II* and REMAND the matter back to the district court.

---

[68] *N. Assur.*, 201 F.3d at 88–89.